### JONES, Ex parte.

CONSTITUTIONAL LAW—*Act January* 21, 1861.—There is no prohibition, either in the Constitution of 1836 or 1868, against the exercise of the power, by the Legislature, of establishing more than one place for holding Circuit Courts within the limits of any county in the State, and the act of the 21*st* *of January*, 1861, entitled "An act to establish separate courts in the county of Sebastian," so far as it designates Fort Smith as the proper place to hold a Circuit and Probate Court, is valid.

COURTS—*Action of, when void.*—The holding of a court at a time or place, other than that prescribed or authorized by law, and all proceedings thereunder are *coram non judice* and void.

PETITION FOR HABEAS CORPUS.

*U. M. Rose*, for Petitioner.

Under the Constitution of 1836, the Circuit Courts were regarded as the principal courts of assize of their respective counties—had jurisdiction throughout the county for which it was held, and held at the county seat. No other Circuit Courts were known, and we should give to the language the same meaning which it had in the minds of those who used it. *State vs. Scott*, 9 *Ark.*, 270 ; *Allis, ex parte* 12, *Id.*, 101. The Constitution of 1868 did not continue in force any law which was opposed to the Constitution of 1836, though it might not come in conflict with its own provisions. *Const.*, 1868, *Sec.* 16. The act of 1860, was therefore, not made good.

The words "Circuit Courts," in the Constitution of 1868 have the same meaning as in that of 1836. *Const.* 1868, *Art. VII. Sec.* 1.

The unity of a county as a *quasi* municipal corporation as much requires that there shall be but one Circuit Court for that county, as that there shall be but one County Court. Two Circuit Courts exercising the same supervisory control of it over one County Court, would subject the latter to a state of misery forbidden by the Constitution. *Const.* 1868, *Art. 1, Sec.* 7.

The greater part of the acts of 1860, and 1871, being mani-

festly unconstitutional, the whole must fall. *Leach vs. Smith,* 25 *Ark.,* 256 ; *Patterson vs. Temple, MS. opinion.*

*Montgomery, Attorney General,* for the State.

The court held at Fort Smith, at which the prisoner was convicted and sentenced, being held within the jurisdiction of the judge holding the same, was a *de facto* court if not *de jure.*

When a person voluntarily submits to the jurisdiction and does not attempt to question the authority, the action of the court is valid. *Rives vs. Pettit,* 4 *Ark.,* 582.

BENNETT, J.—On the 24th day of May, 1872, James N. Jones filed, in this court, a petition for a writ of habeas corpus, alleging he was illegally detained by George S. Scott. The writ was issued. The return upon it states that the petitioner is held by him as keeper of the State penitentiary, by virtue of the commitment and order of the Circuit Court of the county of Sebastian, held at Fort Smith, on the 16th day of October, 1871.

To which return the petitioner files a general demurrer.

The legality of the commitment and order of the Circuit Court is only questioned by the demurrer, upon the ground that the court was not held at the time and place prescribed by law.

On a previous day of this term, in the case of *Patterson vs. Temple, MS. opinion,* we had occasion to review the various laws of the General Assembly, the acts of the people and the proceedings and orders of the County Court of Sebastian county, since July 21, 1868, in relation to their county seat matters.

In that case, we decided that Greenwood was the county seat of Sebastian county, and that the act of the General Assembly, approved March 28, 1871, was unconstitutional and void.

These being the only points raised, in the record of that

case, this court did not feel warranted in going further, but left the questions of time and place of holding the various courts in that county, as it was by law declared previous to that time. On the 21st day of January, 1861, the General Assembly approved an act entitled " An act to establish separate courts in the county of Sebastian." This enactment provides that for the purpose of holding Circuit and Probate Courts, Sebastian county shall be divided into two judicial districts, and what shall be the jurisdiction of these courts within those limits, and what shall be the jurisdiction of them generally, throughout the county. This act provides for the putting of these separate courts into active operation. It also disclaims any intention, by expression or implication, to make any division of the county otherwise than for the purposes named, and says : " As to all matters not within the provisions of this act, the county of Sebastian shall be one' entire and undivided county." It does not disturb the Circuit or Probate Courts, previously established at Greenwood, the county seat, only so far as it, in part, restricts their territorial jurisdiction. It does not undertake to disturb the unity of the county as a *quasi* municipal or political corporation. It does not interfere with any of its corporate powers or the authority that had charge of the fiscal affairs of the county. It does not attempt to institute the mode whereby the citizens of one portion of the county may be taxed more, and in a different manner than the other. It does not purpose to divide the debts and responsibilities of the whole county, and apportion them to be paid by certain localities, as was the case in the act of March 28, 1871. But this act merely, in effect, establishes a Circuit and Probate Court at Fort Smith, and defines their territorial jurisdiction. Could the General Assembly do this as far as the Circuit Courts were concerned, and not violate any constitutional provision? We think it could.

We find by reference to *Section* 1, *Art.,* 6, *of the Constitution of* 1836, " That the judicial power of this State shall be vested

in one Supreme Court, in Circuit Courts, in County Courts and in justices of the peace. The General Assembly, * * * when they deem it expedient, may establish Courts of Chancery."

*Section* 3, of the same Constitution, defines the general jurisdiction as to subject matter of Circuit Courts, but is silent as to territorial limits, and provides that this court should be held " at such place, in each county," as might be by law directed. *Section* 5 says, Circuit Courts shall exercise a superintending control over the County Courts, and over justices of the peace, in each county, in their respective circuits, etc. *Section* 6 gives to Circuit Courts chancery powers.

It is conceded to be a correct doctrine that every enactment of the State Legislature is presumed to be constitutional and valid; that before it can be pronounced otherwise, that clause of the Constitution must be clearly designated with which the act of the Legislature conflicts, since the Legislature, representing the people, have, as a rule, power to pass any and all acts except those prohibited by either the State or Federal Constitution. *State vs. Ashley*, 1 *Ark.*, 513; *Eason vs. State*, 11 *Ark.*, 481; *Leach vs. Smith*, 25 *Ark.*, 251.

Under the Constitution of 1836, Circuit Courts were emphatically State Courts, having general jurisdiction, and were tribunals for the general administration of justice. They were not restricted in their operations to any prescribed territorial limits as far as that Constitution was concerned. True, it is rare (and we know of no instance) to find more than one Circuit Court, or court of general assizes established within a county, throughout the States of the Union, unless it has a large number of inhabitants within its limits, and where one such court could not transact the business which would naturally arise without great delay and injustice.

While we may not wish to encourage the policy of establishing more than one place for holding Circuit Courts within the limits of any county in this State, thereby subjecting sparsely ·settled communities to the great burden of paying

for the expense of such courts, yet, should the law-making power think the due administration of justice demands such a course of action, we can find no constitutional provision, either in the Constitution of 1836 or 1868, that would prohibit them from so doing, but public policy would seem to demand that they hesitate long and deliberate well before taking such a step.

The act under consideration, so far as it designates Fort Smith as the proper place to hold a Circuit and Probate Court, is valid.

It appears, affirmatively, by the record which is filed with the petition, that James N. Jones, the petitioner, was convicted of larceny and sentenced to the penitentiary at a term of the Circuit Court begun and held at Fort Smith, in that county, on the 16th day of October, 1871, it being the third Monday after the fourth Monday in September of said year. This was not the time for holding Circuit Courts at Fort Smith.

By an act of the General Assembly, approved February 4, 1869, we find the Circuit Courts of the Fifth Judicial Circuit shall be held as follows, to-wit: In Sebastian county (Fort Smith district), on the fifth Monday after the fourth Mondays in March and September. How does this affect the rights of the petitioner?

In the case of *Brumley vs. State*, the court say: "The meeting together of the judge and officers of court at the place, but not at the time fixed by law for holding the court, was not a court under our Constitution and law, but was a mere collection of officers, whose acts must be regarded as *coram non judice* and void." *Brumley vs. State*, 20 *Ark.*, 78; *Dunn vs. State*, 2 *Ark.*, 229.

In the case at bar, the judge was clothed with no judicial authority; there was no court, consequently no judgment.

The defendant, James N. Jones, will be discharged from the custody of the keeper of the penitentiary, and remanded into the charge of the sheriff of Sebastian county, to be proceeded against, according to law, for the offense of which he is charged.