## HANLON *v.* THE BOARD OF COMMISSIONERS OF FLOYD COUNTY.

COUNTY AUDITOR.—*Salary.*—*Constitutional Law.*—That portion of section 11 of the act of March 12th, 1875 (Acts 1875, Spec. Sess. 31), which provides for an increased compensation to a county auditor where the popu-

lation of the county exceeds fifteen thousand, is not in conflict with the constitutional prohibition of the passage of local or special laws in relation to fees or salaries.

SAME.—*Construction of. Statute.*—In determining the amount of the allowance to a county auditor under said section 11, the last census taken by the United States must be looked to, for the purpose of determining whether there is an excess of population over fifteen thousand, and also the amount of the excess; and the increase of compensation provided for by said section can be made only by adding to the allowance of fifteen hundred dollars, provided for each county without regard to population, the sum of one hundred and twenty-five dollars for each one thousand inhabitants in excess of fifteen thousand, no addition being authorized for a fractional part of one thousand inhabitants.

SAME.—*Stamps.—Post-office Box.*—No allowance can be made to a county auditor for stamps for the use of his office or for post-office box rent.

SAME.—*School Fund — Construction of Statute.*—By the words "school fund of the county," used in section 12 of said act of March 12th, 1875, providing that "auditors shall receive one per cent. for managing the school fund of the county," reference is made to that fund only which by section 2 of the act of March 6th, 1865, 3 Ind. Stat. 440, is made a permanent fund never to be diminished in amount; and it was not intended by said words to embrace state taxes for school purposes, special school taxes, local school taxes, interest on common school fund, interest on congressional school fund, or taxes distributed to the county.

BUSKIRK, J., dissented, holding that under said words, "school fund of the county," it was intended to include the income of the various permanent school funds.

From the Floyd Circuit Court.

*J. H. Stotsenburg,* for appellant.

*G. V. Howk* and *W. W. Tuley,* for appellee.

WORDEN, J.—The appellant filed an account before the board of commissioners of the county, for his services as auditor of the county, for four months, from November 1st, 1875, when his term of office commenced, to March 1st, 1876. The board not making such an allowance as was satisfactory to the appellant, he appealed to the circuit court, where the cause was tried, and judgment rendered for the appellant, but for an amount not sufficient to meet the views of the appellant; hence he appeals to this court.

The auditor's compensation, in the way of salary and fees,

is governed by sections 11 and 12 of the act of March 12th, 1875, Acts 1875, Spec. Sess., 31.

Section 11 of the act is as follows:

"The auditor of each county shall be allowed the sum of fifteen hundred dollars per year for his services, and no more, except as provided in this act. When the population of the county exceeds fifteen thousand, as shown by the last preceding census, taken by the United States, the additional sum of one hundred and twenty-five dollars, for each one thousand inhabitants of such county over fifteen thousand, shall be allowed to such auditor, and one hundred dollars, for making all reports required by law to the Auditor of State. Such allowance shall be made in quarterly instalments by the board of county commissioners during their regular sessions in March, June, September and December, and paid out of any county revenue of such county not otherwise appropriated; but payment shall not be made in advance of services rendered."

The 12th section of the act, after providing for certain fees to be paid by individuals for services to be rendered by the auditor, but not to be paid out of the county treasury, concludes as follows:

"Auditors shall receive one per cent. for managing the school fund of the county."

The case here involves the validity and construction of section 11 and the construction of the part of section 12, above set out.

It is objected by the appellant that section 11 is local and special, and therefore void, as being in conflict with section 22 of the 4th article of the constitution of this State, which prohibits the passage of any local or special laws on certain specified subjects, including fees and salaries. The objection is pointed to that portion of the section which gives an increased compensation where the population exceeds fifteen thousand. But, in our opinion, the section is neither local nor special, within the true sense and meaning of the constitution; but, on the contrary, it is general and of uniform

operation. It operates uniformly and alike, in all parts of the State, under like facts. It gives the same increase of compensation in all counties where there is the same excess of population. In *Groesch* v. *The State*, 42 Ind. 547–561, it was said by this court, that "it cannot be held that the framers of the constitution intended that the operation of laws throughout the State should be uniform in any other sense than that their operation should be the same in all parts of the State under the same circumstances and conditions." See, also, *Smith* v. *Doggett*, 14 Ind. 442.

Regarding the section as valid, we proceed with its construction, so far as it is necessary for the purposes of the case.

It was agreed by the parties upon the trial, that the population of the county, according to the last census taken by the United States, was twenty-three thousand three hundred, but that the actual population of the county, at the time the services were rendered, was thirty thousand. The court allowed the appellant the amount due upon the basis of a population of twenty-three thousand, rejecting the fractional three hundred. The appellant claims that he was entitled to compensation upon the basis of a population of thirty thousand, the actual population at the time of the rendition of the services. He argues that, while, under the statute, the last census taken by the United States must be looked to in order to determine whether there was an excess of population in the county over fifteen thousand, yet that the census should not be looked to in order to determine how much the excess was; in other words, that, having ascertained by the census that there was a population of over fifteen thousand, it was competent to ascertain the amount of the excess by other means than the census. We cannot, however, adopt that construction. The legislature provided no other means than the census, to determine either whether there was an excess of over fifteen thousand or the amount of the excess. In our opinion, it was the intention of the legislature that the amount of the population should be determined by the

census, and that the auditor should be paid according to the population, as shown by the census, where the population, as thus shown, exceeds fifteen thousand. We are also of opinion that the court committed no error in rejecting the fractional three hundred. The statute makes no provision for fractions. It allows the auditor one hundred and twenty-five dollars for each one thousand inhabitants over fifteen thousand. It makes no provision for the excess, unless it amounts to one thousand. If the excess amounts to more than one thousand, but not to two thousand, there is no provision for paying as for an excess of more than one thousand, and so on. We are of opinion, therefore, that the action of the court, so far as we have considered it, was right.

The court rejected a claim of the plaintiff of five dollars for stamps for the use of his office, and one for one dollar and fifty cents for post-office box rent. This was right. The law makes no provision for the payment of such claims, but, on the contrary, prohibits them. The fifteenth section of the act provides, that "the board of county commissioners shall make no allowance, not specially required by this act, to any county auditor, clerk, sheriff or treasurer, either directly or indirectly," etc. If the board of commissioners have no right to allow for such claims, it is clear that the circuit court had none, on appeal from the commissioners. Such expenses, if necessary, must be borne by the auditor. They are a burden which he takes upon himself when he takes the office.

It appeared that the common school fund and the congressional school fund of the county amounted to forty-five thousand one hundred and eighty-seven dollars and fifty-nine cents. The court allowed the appellant the proper per centage on this sum, and about this there is no controversy.

But the appellant claimed one per cent. on forty-one thousand five hundred and fifty-four dollars and thirty-two cents, made up of state taxes for school purposes, special school taxes, local school taxes, interest on common school

fund, interest on congressional school fund, and taxes distributed to Floyd county. This was not allowed. In this the appellant claims the court erred.

We have seen that the statute allows the auditor one per cent. for managing the school fund of the county. The question arises, what is meant by the terms "school fund of the county," as used in the statute?

The constitution, article 8, section 2, determines of what the common school fund shall consist. The second section of the act of March 6th, 1865, 3 Ind. Stat. 440, provides, that "the funds heretofore known and designated as the surplus revenue funds, all funds heretofore appropriated to common schools, the saline fund, the bank [tax] fund, the fund which has been derived, or may be derived, from the sale of county seminaries and the property belonging thereto, the moneys and property heretofore held for such seminaries, all fines assessed for breaches of the penal laws of the State, all forfeitures which may accrue, all lands and other estate which shall escheat to the State for want of heirs or kindred entitled to the inheritance thereof, all lands which have been granted or may be granted hereafter, to the State, when no special object is expressed in the grant, the proceeds of the sales of the swamp lands granted to the State of Indiana by the act of congress of September, 1850, the taxes which may be assessed from time to time upon the property of corporations for common school purposes, the fund arising from the 114th section of the charter of the State Bank of Indiana, shall be denominated the common school fund, and the fund derived from the sale of congressional township school lands, and the unsold congressional township school land at the reasonable value thereof, shall be denominated the 'Congressional Township School Fund,' and shall never be diminished in amount, the income of which, together with the taxes mentioned and specified in the first section of this act, the money and income derived from licenses for the sale of intoxicating liquors, and unclaimed fees, as provided by law, shall be denominated the School Revenue for Tuition;

the whole of which is hereby appropriated and shall be applied exclusively to furnishing tuition to the common schools of the state, without any deduction for the expense of collection or disbursement."

It seems to us to be clear that the terms "school fund of the county," as used in the act of 1875, were intended to embrace that fund only, which, by the act of 1865, is made a permanent fund never to be diminished in amount. The income of the permanent fund, together with such other funds as are to be annually paid out, are denominated the "school revenue for tuition." We cannot think the legislature intended by the use of the words the "school fund of the county" to embrace funds which that body had declared should be denominated "school revenue for tuition." The permanent fund is under the peculiar management of the auditor. It is to be loaned out by him, and collections are to be enforced by him. It was, therefore, appropriate, as a part of his compensation, to give him a per centage on the fund thus managed by him.

The funds on which the court refused to allow the appellant any per centage, it will be seen, constituted no part of the permanent fund, no part of the "common school fund," as provided for by the constitution and statute, but belonged to the class denominated "school revenue for tuition;" and, we think, in this, the court committed no error.

We have thus examined the questions made in the case and find no error in the record.

The judgment below is affirmed, with costs.

BUSKIRK, J.—I do not concur in so much of the foregoing opinion as holds that the auditor is not entitled to one per cent. upon the income of the various permanent school funds. From 1865 to 1873, the auditor received four per cent. for all disbursements of interest derived from said funds. See sec. 107 of school law of 1865, 3 Ind. Stat. 461; sec. 28 of fee and salary act of 1871, Acts of 1871, page 38.

By the fee and salary act of 1873, Acts of 1873, Reg. Sess., p. 126, the auditor was allowed one-fourth of one per cent. upon all school funds disbursed by the auditor. This embraced, not only the interest collected, but the money derived from taxation for school revenue for tuition and special school tax. For construction of these various acts, see *Myrick* v. *The Board, etc.*, 33 Ind. 383; *Wright* v. *McGinnis*, 37 Ind. 421; *Adams* v. *The Board, etc.*, 46 Ind. 454; and *Scott* v. *The Board, etc.*, 51 Ind. 502. In placing a construction upon the words " school fund," as used in the fee and salary act of 1875, we are required to examine all former acts bearing thereon, whether repealed or unrepealed. Buskirk's Prac. 358 to 366. In view of the previous acts bearing upon the question, I am satisfied that the legislature intended to include under the words "school fund" the income of the various permanent school funds. In my judgment, undue importance has been attached to the language of the second section of the school law of 1865, which is set out in the opinion of the majority of the court. The income of the permanent funds and the money derived from taxation are denominated "school revenue for tuition," so as to preclude the possibility of the appropriation of such revenue to the erection and furnishing of school houses, which are provided for by a special school tax.