# Sanders *v.* The State.

### Indictment for Assault and Battery.

1. *Constitutionality of act establishing Court of Quarter Sessions of Perry county.*—An "inferior court," such as the constitution authorizes the legislature to establish (Art. VI, § 1), having been construed by this court, twenty-seven years ago, in the case of *Nugent v. The State* (18 Ala. 521), to mean a court whose judgments or decrees are revisable by a higher tribunal on error or appeal ; and that construction having been recognized and acted on ever since, not only by this court, but by the general assembly, and by constitutional
VOL. LV.

[Sanders v. The State.]

conventions ; the Court of Quarter Sessions of Perry county, as established by the act approved February 23, 1876 (Sess. Acts 1875-6, p. 371), although its jurisdiction is made co-extensive with that of the Circuit Court, is an "inferior court" within the meaning of that constitutional provision.

2. *Waiver of trial by jury.*—In criminal cases, it is the better practice to submit all issues of fact to the decision of a jury, rather than by consent to devolve them on the court; since it may be a delicate inquiry, whether the accused can waive a trial by jury, if a jury is a constituent of the court, or if there is no appeal to a higher tribunal of which a jury is a constituent.

3. *Former conviction.*—The maltreatment of a county convict, by a person to whom he is hired (Rev. Code, § 3687), by chaining him to a plow, necessarily includes an assault and battery ; and under an indictment for the former offense, the statute (Rev. Code, § 4199) authorizes a conviction for the latter ; hence, a judgment of conviction, under an indictment for such maltreatment, is a bar to a subsequent indictment, charging the same offense as an assault and battery.

FROM the Court of Quarter Sessions of Perry.

Tried before the Hon. POWHATAN LOCKETT.

The indictment in this case, which was found at the August term of said court, 1876, contained two counts; the first count charging an assault and battery by the defendant on one Lewis Massey, "using a weapon"; and the second, an assault and battery on said Massey," using a chain." No demurrer, or other objection, was interposed to the indictment. The defendant pleaded, to each count, his conviction under a former indictment for the same offense; and in support of this plea, he offered in evidence the record of the prosecution against him for the maltreatment of said Lewis Massey as a hired county convict, (decided at this term), and the testimony of the solicitor by whom the two indictments were framed, and of the several witnesses who were before the grand jury, showing that the two prosecutions were in fact for one and the same offense. On all the evidence adduced, the court overruled the plea; to which the defendant reserved an exception. He then pleaded not guilty; and issue being joined on that plea, he was convicted, under the charge of the court, and fined one dollar.

JOHN F. VARY, for the defendant.

JOHN W. A. SANFORD, Attorney-General, for the State.

BRICKELL, C. J.—It is insisted for the appellant, that the act "to establish a Court of Quarter Sessions for Perry county," is violative of the constitution, because it confers on that court jurisdiction coextensive with that of the Circuit Court, and it is not, therefore, an *inferior court*, which the general assembly has power to establish. The present constitution vests the judicial power of the State "in the senate, sitting as a court of impeachment, a supreme court,

circuit courts, chancery courts, courts of probate, *such inferior courts of law and equity, to consist of not more than five members, as the general assembly may from time to time establish*, and such persons as may be by law invested with judicial power." The jurisdiction of the senate, sitting as a court of impeachment, is defined, as is that of the Supreme and Circuit Courts. The ninth section of the same article of the constitution declares, that the general assembly shall establish in each county a court of probate, "for the granting of letters testamentary, and of administration, and for orphans' business." The jurisdiction of the courts of chancery, and of the inferior courts of law and equity which the general assembly may establish, is undefined.

The constitution of 1819 declared, that the judicial power of the State should be vested in "one supreme court, circuit courts, *and such inferior courts of law and equity as the general assembly may from time to time establish.*" The senate was clothed with exclusive jurisdiction of impeachments. The jurisdiction of the Supreme and Circuit Courts was defined substantially as in the present constitution, except the jurisdiction of impeachments, now conferred on these courts. In the distribution of the judicial power of the State, that constitution contemplated the establishment by the general assembly of courts of chancery, having, so far as was suitable to our institutions and jurisprudence, the jurisdiction pertaining to such courts in the older States, and in England. The general assembly, as in the present constitution, was authorized to establish in each county courts of probate, having the jurisdiction expressed in the present constitution. Long prior to the formation of the present constitution, these courts had been established, their jurisdiction defined, and from time to time enlarged or diminished by legislation. It is to these courts, as established and existing, the present constitution refers in its distribution of the judicial power; while their establishment, and distribution to them of judicial power, was contemplated and authorized by the constitution of 1819. This reference in the present constitution to existing courts, which the constitution of 1819 intended should be established, does not authorize the supposition that it was intended to enlarge or narrow the power, conferred by both constitutions on the general assembly, *to establish inferior courts of law and equity.*

In *Nugent v. State*, 18 Ala. 521, it was declared, that *an inferior court*, which the general assembly had power to establish, was not an *inferior court*, as that term was often used at common law—a court, the judgments or decrees of which, standing alone, unsupported by the recital in its

records of the facts on which its jurisdiction depended, were mere nullities; but an *inferior court*, because of its relation to a higher tribunal, having jurisdiction, on writ of error, or appeal, to revise its decrees or judgments. That decision was made twenty-seven years ago; and in each of the successive changes of constitution, made within the last seventeen years, the grant of power to the general assembly, to establish inferior courts, has been expressed in the same terms as in the constitution of 1819. Successive legislatures, under each of the several constitutions, have, in the exercise of the power, established such courts; *inferior*, not in jurisdiction, but because their judgments or decrees were the subject of revision in this court. Constitutional conventions, legislative bodies, and this court, have acquiesced in and recognized this decision, as a final, conclusive exposition of the power of the general assembly; and we could not, if we were inclined, depart from it. It affirms the power of the general assembly to establish the Court of Quarter Sessions, with jurisdiction concurrent with that of the Circuit Court, and such other jurisdiction as the general assembly may deem it expedient to confer.

2. The plea of *autrefois convict* was interposed to each count of the indictment; and, without objection, was tried by the court, without the intervention of a jury. The judgment of the court, overruling the plea, is sought to be revised. The ninth section of the act creating the court, authorizes this mode of trial, if consented to by the State and the defendant. It is not necessary, in this case, to determine whether the judgment of the court could be affirmed, if we concurred in its correctness. It is better, in a criminal case, that all issues of fact be submitted to, and determined by a jury; and it may be a delicate inquiry, whether the consent of the accused can dispense with a trial by jury, if a jury is a constituent of the court, or if there is no appeal to a higher tribunal, of which a jury is a constituent. We pass the consideration of this question, until its decision is necessary.

3. The indictment contains two counts; the first charging an assault and battery on Lewis Massey, with a *weapon*, without describing it; the second charging the same offense, with a *chain*. The indictment, on which the former conviction was had, charged the defendant with maltreatment of said Massey, a convict sentenced to hard labor for the county, and hired to the defendant, by *chaining him to a plow*. Each indictment was found by the same grand jury, on the same evidence, and returned as a *true bill*, at the same time. The solicitor framing them testified, that he framed each indictment to cover the same transaction, because he doubted

the propriety of joining counts for an assault and battery in the indictment for maltreatment; therefore, the present indictment was framed, charging, as was his practice, in the first count, the assault and battery to have been committed with a *weapon* generally, and in the second count designating specially the description of the weapon. He was in doubt whether the proof would, in legal contemplation, support the averment, in the indictment for maltreatment, that Massey was a convict hired to the defendant. He communicated his opinions to the grand jury. There was, probably, before the grand jury some evidence that the defendant, before chaining Massey to the plow, had stricken him one or two blows with his fists. It is apparent. however, that neither the present indictment, nor the former, was found on that evidence.

The maltreatment, charged in the former indictment, necessarily involved an assault and battery—the infliction of unlawful violence on the person of the convict. It is, equally with an assault and battery, a misdemeanor; and the only difference in punishment is, that the fine for it can not be less than fifty dollars, while for an assault and battery the fine may be less, if the jury so determine. The fine for neither can exceed five hundred dollars, and each may be visited with imprisonment, or hard labor for the county, for a term not exceeding six months. The statute authorizes a conviction for any offense, whether felony or misdemeanor, which is included in the charge stated in the indictment.— R. C. § 4199. Applying the test, which generally determines the sufficiency of the plea of *autrefois convict,* or *autrefois acquit*—whether the facts alleged in the second indictment, if proved, would have warranted a conviction on the first indictment—the evidence sustained the plea, and the court erred in overruling it. The defendant has been convicted on evidence of the same transaction, on which the present indictment was founded, and punished for the offense it involves, which the law punishes with the greater severity. A second trial is an invasion of constitutional guaranty, and of common-law principle.

Let the judgment be reversed : and this court, rendering the judgment the court below ought to have rendered, doth order and adjudge, that the pleas of former conviction be, and they are sustained, and that the defendant be, and he is discharged from all further prosecution on this indictment.