## BURKS v. WALKER.

No. 991. Opinion Filed December 14, 1909.

1.      **COURTS—County Superior Courts—Constitutionality.** The act of the legislature entitled: "An act creating and establishing a county superior court for each county of the state having a population of 30,000, and a city therein of 8,000, ets." (Sess. Laws, 1909, p. 181), does not violate sections 1 and 10 of article 7 of the Constitution.

2.      **SAME.** Said act is general in its nature and uniform in its operation and does not violate section 59, article 5, of the Constitution.

(Syllabus by the Court.)

*Appeal by Certified Record from District Court, Oklahoma County; George W. Clark, Judge.*

Action by D. W. Walker against F. H. Burks. From an order of the District Court transferring the cause to the Superior Court of the county, defendant appeals. Affirmed.

*M. Fulton,* for plaintiff in error.—Citing: *Dunn v. State,* 2 Ark. 229; *Merchant v. North,* 10 Ohio St., 251; *Pittsburg & R. R. Co. v. Hurd,* 17 Ohio St., 146; *Moore v. Packwood,* 5 Ore. 325; *Brossan v. Samuel,* (Ga.) 54 S. E. 181; *Williams v. Rutzel,* 60 Ark. 155; *Whitten v. Belknap & Co.,* 89 Tex. 273; *Roberts v. Police Court of San Francisco,* 148 Cal. 131; *Green v. Superior Court,* 78 Cal. 556; *Ex parte Wallingford,* 60 Cal. 103; *Howard v. LaCroix, McGloin* (La.) 16; 11 Cyc. 772; *State v. LaCross County Judge,* 11 Wis. 50; *Timmons v. Bonner,* 58 Tex. 555; *In re McVay* (Idaho) 93 Pac. 28.

HAYES, J. Plaintiff in error seeks by this proceeding to reverse an order of the district court of Oklahoma county transferring this cause from that court to the superior court of Oklahoma county. Defendant in error, plaintiff below, seeks by this action in that court to recover the sum of $5,000.00 as damages for personal injuries sustained by him from an alleged assault upon his person by plaintiff in error, defendant below. The order of transfer was made upon motion of plaintiff under the provisions of section 10 of an act approved March 24, 1909, entitled: "An act creating and establishing a county superior court for each county of the state having a population of 30,000 and a city therein of 8,000, and fixing the jurisdiction of said court; etc." (Sess. Laws 1909, p. 181), which act we shall hereafter refer to as the Superior Court Act.

A reversal of this order is sought upon the ground that several of the provisions of the act creating the court and conferring upon it jurisdiction of certain causes is in conflict with the Constitution, and further, that said act is lacking in some essentials necessary to the establishment of any court thereunder.

Section 2 of the act confers upon the courts established thereby concurrent jurisdiction with the district court in all proceedings, causes or matters, and concurrent jurisdiction with the

county court in all civil and criminal matters except matters of probate. It is urged that that portion of the section which confers concurrent jurisdiction with the district court in all matters violates section 1 of article 7 of the Constitution (Snyder's Ed. p. 205), in that it creates a court with jurisdiction equal to the jurisdiction of the district court, and violates section 10 of the same article, for the reason that it confers jurisdiction upon the superior courts that is by said section of the Constitution conferred exclusively upon the district courts. Section 1 of article 7 of the Constitution provides:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

That portion of the section reading "and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law" clearly contemplates and provides that a portion of the judicial power of the state may be vested in other courts than those specifically named in the section. It is to be borne in mind that a state Constitution, in so far as it relates to the legislative department of the state, does not grant powers, but limits them, and such department possesses all the legislative powers not prohibited or restricted by the provisions of the Constitution. The only limitation imposed by this section upon the power of the Legislature to create other courts is that such courts shall be inferior to the Supreme Court. The words "inferior courts," as used in constitutional and statutory provisions, are sometimes used in a technical sense and apply to courts of special and limited jurisdiction which are created on such principles that their judgments, taken alone, are entirely disregarded and the proceeding must show their jurisdiction. *Lessee of Robert Grignon et al. v. Astor et al.,* 2 How. 319. They are also used in the more general sense as applying to that class of courts from which an appeal lies to some appellate court and to express the relation between said classes of courts. *Swift v. Wayne Circ. Judges,* 64

Mich. 479; *State v. Daniels*, 66 Mo. 192; *Ex parte Orr*, 51 Ala. 42; *Sanders v. State*, 55 Ala. 42.

The words "inferior" and "courts" do not appear in the provision of the Constitution now under consideration in the relative positions that they occur in similar provisions of the Constitutions of some of the other states. The relative positions of these words as they appear in section 1, *supra*, aid materially in arriving at the meaning intended. This section provides that the judicial power shall be in certain named courts and such other courts, "inferior to the Supreme Court, as may be established by law." The position of the word "inferior" indicates that it was intended to fix the relation that any court created by the Legislature should bear to the Supreme Court, and that it was in no way attempted to fix the relation of such courts to the other courts named in said section. No limitation or prohibition is contained in this section against the Legislature creating courts with jurisdiction concurrent with any of the other courts named therein, and, if such limitation or prohibition exists, we must look to other provisions of the Constitution to find it.

In *Morris et al. v. Bunyan*, 58 Kan. 212, a provision of the Kansas Constitution not identical with the one now under consideration, but very similar, was considered by the Supreme Court of that state, and held not to prohibit the creation of another court having jurisdiction concurrent with the district court of that state in one or all classes of cases. The court in the opinion said:

"Section 1, of the same article, vests the judicial power of the state in the Supreme Court, district courts, probate courts, justices of the peace, and such other courts inferior to the Supreme Court as may be provided by law. No restriction is anywhere imposed on the creation of courts inferior to the Supreme Court. The Legislature is left free not only to create such courts inferior to the Supreme Court as it deems best, but also to confer so much, or so little, jurisdiction on them as it sees fit. * * * The Constitution does not prohibit the Legislature from conferring concurrent jurisdiction on two or more courts,

and no good reason is apparent, opposed to the policy, even, of doing so."

*Mill v. Brown,* 31 Utah, 473, is another case in point. The Constitution of Utah provides that the judicial power of the state shall be vested "in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law." The Legislature of that state passed an act creating a juvenile court and conferring upon it jurisdiction of certain cases that had theretofore been exercised by the district court. In discussing the contention of appellant in that case that the act was void, because it gave to the juvenile court certain powers theretofore exercised by the district court, Mr. Justice Frick, in the opinion, said:

"But the fact that certain powers or duties may be exercised by certain courts does not prohibit the Legislature from creating new courts and conferring upon those like powers and duties. Indeed, our Constitution seems to have been framed with this objection in view. * * * While there are certain limitations in respect to certain powers as applied to certain courts, the Constitution wisely refrains from conferring exclusive original jurisdiction upon any of the courts, but vests such original jurisdiction in all the courts to be apportioned and exercised as the Legislature may direct."

Section 10 of article 7 of the Constitution (Snyder's Ed. p. 218) in part provides:

"The district courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court, and such appellate jurisdiction as may be provided in this Constitution, or by law."

It is urged that this clause of the Constitution confers upon the district courts exclusive original jurisdiction in all cases, except where exclusive jurisdiction is by the Constitution or by law conferred upon some other court. This contention would have us interpret the words "original jurisdiction" to mean "exclusive original jurisdiction." The phrase "original jurisdiction" means the power to entertain cases in the first instance as distinguished from appellate jurisdiction. *Castner v. Chandler,* 2

Minn. 86. They do not mean exclusive jurisdiction. A court of original jurisdiction is one in which an action has its origin. *Abbott v. Knowlton,* 31 Me. 77. This phrase, it is true, when influenced by the context of a statutory or constitutional provision of which it forms a part, may be construed to confer exclusive jurisdiction, and was so construed in *Caulfield v. Hudson et al.,* 3 Cal. 389, and *Zander v. Coe,* 5 Cal. 230. This meaning, however, was given in those cases as a result of the influence of the context of the Constitution of which these words formed a part and in connection with the construction of other provisions thereof. If the language quoted gives to the district court exclusive original jurisdiction in all civil and criminal cases except where exclusive jurisdiction has been conferred upon some other court, then it must be paraphrased to read: "The district court shall have exclusive original jurisdiction in all cases civil and criminal except where exclusive jurisdiction is by the Constitution or by law conferred upon some other court." It would then follow that every civil case would have to be brought originally in the district court unless exclusive jurisdiction was conferred upon some other court. This would be in plain conflict with both sections 12 and 18 of the same article of the Constitution. Section 12 provides that the county court, co-extensive with the county, shall have concurrent jurisdiction with the district court in all civil cases where the amount involved does not exceed one thousand dollars, exclusive of interest, except certain cases which it is not necessary to mention here. If the jurisdiction of the district court over such cases as it has jurisdiction of is exclusive, it would be impossible for any other court to have concurrent jurisdiction with it over any case. But the jurisdiction of the county court over civil cases conferred by section 12 exists only concurrent with the district court. Likewise by section 18 it is provided that courts of justices of the peace shall have, co-extensive with the county, jurisdiction in civil cases where the amount involved does not exceed two hundred dollars, exclusive of interest and costs. Under this section, courts of justices of the peace have, concurrent with the county court, jurisdiction in civil

cases where the amount involved does not exceed the sum of two hundred dollars, exclusive of interest and costs. This jurisdiction of the justice courts is not exclusive. Not being exclusive, civil cases involving less than two hundred dollars would not be excepted from the jurisdiction of the district court by the saving clause of section 10, quoted *supra*. But if such cases fall within the jurisdiction of the district court and the jurisdiction of the district court be exclusive, it would be impossible for the justices of the peace courts to have jurisdiction of such cases. It is therefore apparent that the construction contended for by plaintiff in error would lead to hopeless conflict between the different provisions of the Constitution and endless confusion, and would render some of its provisions nugatory. But constitutional provisions, like statutory provisions, are to be construed, if possible, so as to give effect to the whole instrument and to every section and clause. Courts must harmonize the different portions and lean in favor of a construction that will render every part operative rather than defeat some of its provisions. (Cooley, Const. Lim. p. 91). The fair intendment of section 10 is, we think, to provide that district courts shall be courts of general jurisdiction; that jurisdiction of any cause may be taken by that court unless exclusive jurisdiction has been conferred upon some other court; that whether any civil case is within the jurisdiction of the district court or within the jurisdiction of some court having concurrent jurisdiction with the district court is a matter entirely subject to legislative control. A careful reading of the various provisions of the Constitution by which jurisdiction is conferred upon all the courts, except the Supreme Court, will readily disclose that it was the policy of the framers of the Constitution in a great measure to leave the question of jurisdiction of the various courts of the state subject to legislative disposition and control. And when the condition of the courts and their dockets at the time of the framing of the Constitution is recalled, it can be readily understood why the framers of the Constitution did not undertake to fix by hard and fast rule the jurisdiction of the inferior courts of the state. Two different judicial systems had theretofore prevailed

within the territory now constituting the state. The dockets of all the courts were badly crowded, and it was impossible to for-tell just what division of jurisdiction between the various courts would enable the courts of the state to dispose of the business al-ready accumulated upon the dockets and that might reasonably be expected to arise.

The Constitution of the United States provides that "in all cases affecting ambassadors, other public ministers and consuls, the Su-preme Court shall have original jurisdiction." By an act of Congress, original jurisdiction of such cases was also conferred upon some of the inferior federal courts and the Supreme Court of the United States, in *Bors v. Preston*, 111 U. S. 252, sus-tained the act of Congress as valid. The court, in that case, in its opinion quoted from Mr. Chief Justice Taney as follows:

"If the arrangement and classification of the subjects of jur-isdiction into appellate and original, as respects the Supreme Court, do not exclude that tribunal from appellate power in the cases where original jurisdiction is granted can it be right, from the same clause, to imply words of exclusion as respects other courts whose jurisdiction is not there limited or prescribed, but left for the future regulation of Congress? *The true rule in this case is, I think, the rule which is constantly applied to ordinary acts of legislation, in which the grant of jurisdiction over a cer-tain subject-matter to one court, does not, of itself, imply that that jurisdiction is to be exclusive. In the clause in question, there is nothing but mere affirmative words of grant, and none that import a design to exclude the subordinate jurisdiction of other courts of the United States on the same subject-matter.*" (Italics are ours.)

Section 10 grants to the district court original jurisdiction in certain cases, but this grant is not exclusive either by the ex-press terms of the section, nor is there anything within the sec-tion to require us to hold that the same was granted by implica-tion. On the other hand, a construction of such section so as to make it harmonize with the other provisions of the Constitu-tion requires us to hold differently. See, also: *Crowell v. Lam-bert*, 10 Minn. 295; *Woods v. McCau*. 144 Ind. 316.

It is also contended that section 2 of the act is in conflict

with section 12 of article 7 of the Constitution, in that it gives to the superior court jurisdiction concurrent with the county court over misdemeanor cases, and that, without this provision conferring jurisdiction of misdemeanor cases upon the superior court, the act would not have been passed, and therefore the entire act should be struck down.     Section 12, article 7, was before the Criminal Court of Appeals for consideration and construction in *Ex parte Whitehouse,* 3 Okla. Cr., 104 Pac. 372, wherein that court, in an able and exhaustive opinion written by Mr. Judge Owen, held that the provision of section 12 conferring upon the county court exclusive jurisdiction in all misdemeanor cases, except those cases of which it had concurrent jurisdiction with justices of the peace, existed only until otherwise provided by the Legislature, and upon this question we concur in the reasoning and conclusion reached by the court in that case.

It is urged that the Superior Court Act fails to provide the time or place of holding sessions of the court, and that, since a place and time of holding court provided for by law is essential to the legal existence of a court, the act fails to create or authorize the establishment of any court.     This contention, we think, is not well founded in fact.     Section 1 of the act creates and establishes a superior court in every county of the state having a population of thirty thousand or more and having a city therein of eight thousand or more, as now or hereafter shown by the last federal census, and requires that the court shall be held in the largest city of each county.     We think it was the intention of the lawmakers that the largest city of the county in which the court should be held is, like the population of the county, to be determined by the last federal census.     The last federal census taken within this state was the special federal census taken just prior to the admission of the state both in the territory of Oklahoma and the Indian Territory, which census was, by act of the Legislature approved April 8, 1908, made the official census of the state until the next federal census or until a census should be taken under the laws of the state.     Courts are required to take judicial notice of the federal census in determining a question

involving the number of inhabitants in cities and counties within their jurisdiction. *Woods v. McCay, Treas.,* 144 Ind. 316; *Chicago & Alton Ry. Co. v. Baldridge,* 177 Ill. 229; *State v. Bruskamp,* 87 Iowa, 588; *People ex rel. Stoddard v. Williams,* 74 Cal. 87. The act provides a definite criterion for the determination of the largest city of the county at which the court shall be held. There is no provision in the Constitution requiring the session of courts created by the Legislature to be held at the county seat; nor does there exist any provision prohibiting the sessions of such courts from being held at any place other than the county seat. The matter is left entirely to legislative discretion. *Woods v. Mc-Cay, Treas., supra; Ex parte Jones,* 27 Ark. 349.

Section 4 provides that the judge of said court shall, by order of court, fix the terms of said court at not less than four terms each year provided that the first term of such court shall begin as soon as practicable after such court is organized under the provisions of said act. It is not contended that the judge of the superior court of Oklahoma county has not, in compliance with the act, by his order, fixed the terms of court, but that this section is invalid for the reason that it attempts to delegate legislative power to the judge of that court. The Constitution prescribes how the terms of the Supreme Court and the district courts shall be fixed. (Sections 5 and 9, article 7, Snyder's Ed., p. 216-7). But it contains no provision prescribing how the terms of the other courts established by the Constitution, or that might thereafter be established by law, shall be fixed. If the act in question is in any way repugnant to the Constitution, it must be by reason of the fact that it delegates legislative authority. Section 1, article 4, provides that the power of the state government shall be divided into three departments, legislative, executive, and judicial, and, except as provided in the Constitution, these departments shall be separate and distinct and neither shall exercise the powers properly belonging to the others. The power to enact laws is vested in the Legislature subject to the powers of the initiative and referendum reserved to the people. (Sec. 1, art. 5, of the Constitution; Snyder's Ed., p. 126). It is a well settled

maxim of constitutional law that a power conferred upon the Legislature to make laws cannot be delegated to any of the other departments of government. In discussing this maxim, however, the court, in *People of Illinois v. Reynolds,* 5 Gilm. (Ill.) 1, said:

"If the saying be true, that the Legislature cannot delegate its powers, it is only so in its most general sense. We may well admit that the Legislature cannot delegate its general legislative authority; still it may authorize many things to be done by others which it might properly do itself. All powers possessed by the Legislature is delegated to it by the people, and yet few will be found to insist, that whatever the Legislature may do, it shall do, or else it shall go undone. To establish such a principle in a large state would be almost to destroy government. The Legislature may grant ferry licenses, or it may lay out roads and specify their metes and bounds, and yet, who will doubt that it may delegate this power to others, either by general or special law? * * * We see, then, that while the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize other to do those things which it might properly, yet cannot understandingly or advantageously, do itself. Without this power legislation would become oppressive, and yet imbecile."

The Superior Court Act provides for the establishment of courts not only in counties that had at the time of its passage the population, and contained a city of the population, required by section 1, but also provides for the establishment of such court in each county that may hereafter possess the requirements as shown by the last federal census. It therefore would have been impracticable, if not impossible, to have fixed by general act the terms of the various courts established and to be established under said act.

The Legislature no doubt had in contemplation that, before the assembling of the Legislature in another regular session, there will have been taken another federal census, and that in all probability, by it, it will be shown that other counties in the state than those possessing the requirements of the act at the time of its passage, will possess the requirements authorizing the

establishment of a superior court therein. And if the Legislature could not do as it has done—leave the matter of fixing the date of the terms of such courts to the court or judge thereof— then the Legislature would have had the difficult, if not almost impossible, task of anticipating what counties would be shown, by the census to be taken, to possess the requirements for the establishment of a court and to fix the terms of court in such counties. As to the counties possessing the requirements at the time of the passage of the act, there existed in each of them a district court and a county court, with each of which the jurisdiction of the superior court is concurrent, except as to probate matters. The terms of the district court, at the time of the passage of the Superior Court Act and at this time, are not fixed by statutes, but are fixed from time to time by order of the Supreme Court. It therefore would have been impossible for the Legislature to have fixed by hard and fast rule the date on which each term of the superior court should begin in each county in which the same was established so as not to conflict with the terms of the other courts in those counties, or so as to result in the least conflict, and to the greatest convenience to the litigants and the bar of the several counties. The act has prescribed that there shall not be less than four terms per year; that the terms shall be fixed by the judge by order of record. Nothing is left to the discretion of the judge except the date of the term. Everything else is prescribed by the act.

The Constitution of the state of Oregon provides that "the terms of the Supreme Court shall be appointed by law". In 1872 the Legislature of the state passed an act providing that "a term of the Supreme Court shall be held at the seat of government on the second Monday of December annually and at such other times as the said court may appoint by an order entered in the journal at term time". In *Moore v. Packwood,* 5 Or. 325, this act of the Legislature was attacked as unconstitutional upon the ground that it delegated legislative power to the court. The court held the act valid, and in discussing the same said:

"In the law under consideration, the Legislature has pro-

vided the time when one term of the Supreme Court shall be held, and in the same act has provided the mode by which the time may be fixed when other terms shall be held, leaving it to the court to name such other times as may best meet the exigencies of the business. Thus the Legislature, in providing the mode by which the time may be fixed, has to all intents and purposes fixed the term itself—merely leaving the court to designate the day upon which it shall commence".

In 1821, the Legislature of Massachusetts enacted a statute establishing a police court in the city of Boston. The act provided that the court should be held on two several days in each week and as much oftener as might be necessary, and that the justices thereof should, from time to time, assemble and establish all necessary rules for the orderly and uniform conducting of the business of the court. The particular days of the week on which the court should assemble were not designated in the act. In the case of *Henry Sawtell, Petitioner, etc.,* 6 Pick. 109, it was held that said act authorized the justices of the court to appoint the days of the week upon which the court should be held and made it their duty to do so. ,

The Organic Act of Iowa provides that the terms of the district court "should be held at such times and places as might be provided by law." The Legislature passed an act authorizing the district courts to hold special terms and to fix the time for hold· ing same. The validity of this act was questioned in *Harriman v. State,* 2 Iowa, 270, wherein the court said:

"Strictly viewing this clause, it may very plausibly be assumed that the courts could be held at such times only as the appropriate law might fix upon and designate. The application of this principle might safely be admitted so far as the regular terms of the courts are concerned; and this concession would not in the least militate against the power of the Legislature to authorize the judges to hold special or extra terms of their courts, whenever in their opinion occasion might require. This would be a rightful subject of legislation within the meaning of the organic law, and within the province of the legislative assembly. But, had the Legislature conferred upon the judges by statute authority to prescribe the times generally of holding their courts, would it not still be done by authority of

law?· It would still be a regulation emanating from the supreme legislative, and only. authorized, power within the general spirit and meaning of the organic law, if not within its strict letter."

It is true that the expression of the court in that case, so far as it is in point in this, is *obiter,* but it seems to be supported by reason.

In *Ex Parte Mato,* 19 Tex. App. 112, the court had under consideration an act of the Legislature authorizing the court to fix the time of holding courts in some newly organized counties. The opinion was delivered by Presiding Judge White, who, after reviewing at some length the authorities, said:

"In the case in hand we cannot see how the duty to fix the times for holding courts in newly organized counties, imposed by the law upon the district judges, can in any manner be called a delegation of legislative power. The legislative act, in so far as it made provision for the holding of such terms of court, was not only constitutional, but full and complete as far as it was practical or possible to make said act. Its operative effect was necessarily dependent upon a contingency, viz., the organization of the county. When that contingency should happen, the law only required the judge to appoint the times for its effective operation. He certainly exercised no discretion and had no hand in making any portion of the law under which he was acting. With that he had nothing to do. His act in exercising the authority conferred by fixing the times under the law was, as is denominated by Judge Sharswood in *Locke's Case* (72 Pa. St. 491), but 'an act of executive administration,' which the Legislature could rightfully, and as we believe constitutionally confer in order to render effectual and operative its own 'rule of conduct' in the premises."

Section 59, article 5, of the Constitution (Snyder's Ed. p. 180) requires that laws of a general nature shall have uniform operation throughout the state, and when a general law can be made applicable, no special law shall be enacted. Section 32 of this article provides that no special or local law shall be considered by the Legislature until notice of the intended introduction thereof shall have been published for four consecutive weeks in some newspaper published or of general circulation in the city or county affected by such law. Section 46 provides

that no local or special law upon certain subjects shall be passed; but it is not necessary to enumerate those subjects here. It is contended by plaintiff in error that the Superior Court Act is local and special in its nature; that it does not have a uniform operation throughout the state, and since it was passed as a general law, it violates said sections 32 and 59.

In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. To determine whether or not a statute is general or special, courts will look to the statute to ascertain whether it will operate uniformly upon all the persons and parts of the state that are brought within the relation and circumstances provided by it. *People ex rel. v. Hoffman,* 116 Ill. 587; *Nichols v. Walter et al.* 37 Minn. 264. And the operation is uniform if it affects alike all persons in like situation. But where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnish a practical and real basis for discrimination. *Nichols v. Walter, supra.*

"It is not essential that it operate upon all the inhabitants of the state, nor it is an objection that it distinguishes a class In the very nature of things, the law must, in dealing with persons and property and governmental divisions, group persons or objects having similar attributes into classes, and the general assembly must legislate appropriately for each, and, unless it is made manifest that such legislation is directly forbidden by the constitution, or the attempted classification is purely arbitrary, unreasonable, unjust, or capricious, the power of the general assembly to thus classify cannot be successfully challenged." (*State v. Hogan,* 63 Ohio St. 202.)

In *Hanlon v. Board of Commissioners*, 53 Ind. 123, an act providing that the county auditor in each county where the population of the county exceeded fifteen thousand, as shown by the last preceding census taken by the United States, should receive increased compensation, was sustained.

In *State v. Reitz*, 62 Ind. 159, an act providing that the salary of the judges of the criminal courts should be two thousand dollars per annum except in counties having a population of forty thousand, where the salary should be $2,500.00, was sustained.

In *Ladd v. Holmes*, 40 Or. 167, a statute which provided that in all cities of the state containing a population of ten thousand or more, as shown by the last state or federal census, the selection by any political party of delegates to any convention to nominate candidates for public office shall be made under the provisions of the act, which provided a primary election therefor, was sustained.

An act to prevent stock running at large in counties having a population of 50,000 or more according to a given federal census, or any federal census thereafter taken, was held not to be class legislation. *Peterson v. State*, 104 Tenn. 127. See, also, *Cook v. State*, 90 Tenn. 407.

In *Chicago Term. Trans. Ry. Co. v. Greer*, 223 Ill. 104, an act providing that city courts might be organized and established in any city of the state which contained at least three thousand inhabitants whenever a city council should adopt an ordinance or resolution and submit the question whether such court should be established to the qualified voters of the city and two thirds of the votes cast thereon were in favor of the establishment of the court, was held not to be unconstitutional as class legislation.

The Legislature of Utah, in 1905, passed an act entitled "Juvenile Courts." The act provided for the establishment of a juvenile court in cities of the first and second classes in the state of Utah, and jurisdiction of certain classes of cases was given to said courts. Outside of cities of the first and second classes, the jurisdiction conferred upon the juvenile court was placed by

the act upon the district courts. To the objection that the act was not uniform in its operation, the Supreme Court of the state, in *Mill v. Brown, supra,* said:

"Nor does it in any way contravene any constitutional provision, because the act devolves the duties of the juvenile courts, as exercised by them, in cities of the first and second classes, upon the district courts held outside of such cities. The act, for this reason, is not obnoxious to the uniformity clause of the Constitution. Uniformity, in the sense used in the Constitution, simply means uniformity in respect to the class into which a subject-matter may be classified, upon which the law is to operate. The children are dealt with precisely the same whether they are brought before a juvenile court in the city or before a district court in the state at large. The law operates in the one instance precisely as in the other. The only difference is that a district court in the state at large may be required to pass upon fewer cases. The law was enacted for the express purpose of relieving the district courts in cities of the burden, and thus give them the opportunity the county courts have to confine their work more strictly to contested law and equity cases."

Does the Superior Court Act come within the rule of the foregoing cases. We think it does. By its terms, it is not restricted in its operation to those counties of the state which now have a population and contain a city of the population prescribed by section 1, but any county shown by any future federal census of the state to possess the requirements provided in said section falls within the operation of the statute and a superior court is created and established in such county. We take judicial notice of the fact that, at the time of the passage of the act, five different counties of this state possessed the requirements prescribed by the act. It is entirely probable that the federal census to be taken next year will, owing to the rapid increase in the population of this state and the development of its cities, show other counties falling within the provisions of the act authorizing the establishment of a superior court therein. Such counties are not excluded from the operation of the act.

The next inquiry is whether the classification made by the statute is one founded upon real, substantial distinctions, sug-

Vol. 25—24

gested by reason and experience, or is arbitrary and unreasonable. We think the former. The act was passed to relieve the over- crowded dockets of the larger and more densely populated counties of the state and to expedite litigation in such counties. Relief was unnecessary in many of the more sparsely populated counties. Had the Legislature made the act to apply to every county in the state, it would have imposed a useless burden and expense upon a large percentage of them. It therefore undertook to classify the counties on the basis of population and upon whether such population was agricultural or partly agricultural and partly urban. Experience and observation teach that litigation among an agricultural people is not so frequent as among people living in cities and engaged in commercial enterprises. In large cities which are in the main supported by commercial enterprises, contracts are more numerous and the commer- cial relation between the people is more complex. Out of contracts grows a great portion of the litigation of any state. It is also a matter of common knowledge that law violations are more frequent in densely populated communities or cities than in agricultural or rural districts. This fact finds evidence to sup- port it upon the statutes of probably every state providing for inferior municipal courts in the cities with jurisdiction to dispose of many of the minor offenses. This state has, by constitutional provision, prohibited the sale and manufacturing of intoxicating liquors. The violation of this law, past experience teaches, occurs more frequently in the larger cities of the state. Its violation is made a misdemeanor. The county courts of the state have juris- diction of probate matters, of misdemeanors, and of certain civil cases. As a result, the county courts in those counties where many misdemeanors are committed were and are as badly overburdened with litigation as the district courts. The superior courts were given jurisdiction concurrent both with the district court and with the county court to make it a means of relief to both classes of courts in such counties, and to furnish an additional court of original jurisdiction to which new litigation might be taken and where it will receive an early disposition. Courts will not lightly

declare acts unconstitutional. The fact that the legislature has adopted an act carries with it the presumption that it is within the pale of the Constitution, and even where there is doubt as to its constitutionality, that doubt should be resolved in favor of its validity.

We conclude, therefore, that the act in question is general in its nature, and uniform in its operation, and is not in conflict with the Constitution.

Objection is also made to the validity of that portion of section 10 of the act which directs that the judges of the district and county courts shall, upon motion of the plaintiff in any civil action pending at the time of the passage of the act, transfer the cause to the superior court where the same shall stand for trial. By this provision, the Legislature, in creating the court with jurisdiction concurrent with the district and county courts, attempted to afford an opportunity to relieve the dockets of the district and county courts by permitting a cause already instituted to be transferred to the superior court for final disposition, and, at the same time, not deprive the plaintiff in any such action of the opportunity to choose the forum in which he will prosecute his action, which opportunity all statutes conferring concurrent jurisdiction of any cause upon two or more courts afford to the plaintiff. Without this provision in the act, the plaintiff in any cause already instituted in the district or county courts might, by dismissing the same without prejudice, re-instate it in the superior court. No reason appears why he could not be permitted to do directly that which he might do indirectly without this provision of the statute. Where two or more courts have concurrent jurisdiction of the same cause of action, necessarily the statute conferring such jurisdiction gives to the plaintiff the opportunity of selecting the forum in which he shall institute and prosecute his action. If, for any reason, as for bias of the judge, or other cause, the defendant cannot obtain a fair and impartial trial in the court in which the action is instituted, his remedy is the remedy usually afforded by statute, to wit, transfer of judge or change of venue. No good reason has been pointed out to us why

this provision of the statute was not within the power of the Legislature to enact, and, none appearing to us, the contention of the plaintiff in error cannot be sustained.

The order of the trial court is affirmed.

Kane, C. J., Dunn and Turner, JJ., concur; Williams, J., not participating.