CENTRAL COAL & COKE COMPANY v. GRAHAM.

Opinion delivered June 18, 1917.

1. COURTS—CIRCUIT JUDGES—MAY ACT AT TIME OTHER THAN DURING SESSION OF CIRCUIT COURT.—The Legislature, under the Constitution, may authorize the circuit judge to act for the circuit court in a judicial capacity under any circumstances under which the adversary parties could have an opportunity for receiving notice, which would be an exercise of the judicial power by the circuit court created by the Constitution.

2. COURTS—PERFORMANCE OF JUDICIAL ACT—TERM TIME.—The Constitution does not require that every judicial act shall be performed at a regular term of the court.

3. MOTION FOR NEW TRIAL—MAY BE ACTED UPON IN VACATION.—A motion for a new trial may be acted upon in vacation, by the circuit judge.

4. COURTS—ADJOURNMENT TO IMPOSSIBLE DATE.—An adjournment by the circuit court over to a day fixed by law for the holding of court in another county in the same circuit is void, and the term lapses by virtue of the adjournment.

5. COURTS—HOLDING TWO COURTS IN SAME CIRCUIT ON SAME DAY.—Two courts in the same circuit, presided over by one judge, can not be held on the same day.

6. COURTS—ADJOURNMENT.—Under Kirby's Digest, § 1320, it is provided that circuit courts shall continue in session from day to day until its business is disposed of, but it can not stand open from day to day so as to conflict with the holding of court in another county in the same circuit, and an adjournment without specifying a day on which the court will reconvene without interference with the courts in other counties is void, and constitutes an expiration of the term. Such also is the effect of an adjournment to a date which conflicts with the holding of another court.

7. PLEADING AND PRACTICE—MOTION FOR NEW TRIAL.—A trial ended on the last day of the term of the circuit court, a motion for a new trial was presented to the circuit judge in vacation, within ten days allowed by the court, and within thirty days, as provided by Kirby's Digest, § 6218, as amended by Act of 1909, p. 890. The judge overruled the motion, allowing an appeal, and gave ninety days in which to file bill of exceptions. The motion for a new trial was then filed with the clerk. *Held*, the statute was properly complied with.

8. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP.—A cause is removable to the federal court under the federal statute only when the cause is one which could have been originally instituted in the federal court of the district where it is pending in the State court, and if it is brought in the federal district where neither the plaintiff nor the defendant resides, it can not be removed.

9. TRIAL—CONTINUANCES—DISCRETION.—The trial court *held* not to have abused its discretion in refusing to grant a continuance; the appellant not having shown proper diligence in procuring the attendance of witnesses, it was not an abuse of discretion to refuse to postpone the trial even a few hours, in order to await the arrival of witnesses by train, it appearing that such delay might carry the case past the adjournment of the term.

10. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—NOTIFICATION OF DANGER—COAL MINE.—A complaint states a cause of action, when brought by a miner, which alleges that his employer rendered his place of work unsafe for him, without notifying him of that fact, where, after the plaintiff had left the mine room, the employer had

permitted a blast to be set off therein,i as a result of which a **heavy** stone fell, causing an injury to the plantiff.

11. MASTER AND SERVANT—INJURY TO SERVANT—COAL MINE—NEGLIGENCE.—It is the duty of a coal miner to make his own working place safe, but he is not bound to anticipate negligent acts of his employer in rendering his working place additionally insecure without notice to him, and it is for the jury to determine whether the employer was guilty of such negligence as resulted in plaintiff's injury.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman,* Judge; affirmed.

*Ira D. Oglesby,* for appellant.

1. The court erred in not granting the petition to remove the cause to the United States court. Plaintiff was a resident of the Western District and could have sued there. Defendant was doing business in, and was found in that district, where the injury occurred. This is a different case from 203 U. S. 449 and 98 Ark. 507. There neither party resided in the district nor could be found there. The right to remove is clear. 205 Fed. 821; 222 *Id.* 979; 211 *Id.* 343; 218 *Id.* 91.

2. A continuance should have been granted. Not having done so the court should have postponed the trial until the arrival of witnesses *en route* to court and until the return of attachment issued for subpoenaed witness. The testimony was material and due diligence shown. Under the state of facts shown the court abused its discretion and it was a denial of justice. Judicial discretion is subject to review by this court.

3. The court erred in the admission and exclusion of testimony. Defendant moved to exclude the statement of plaintiff that the rock would have remained up if it had not been dynamited, and his testimony that he would not have worked there if he had known that five sticks of dynamite had been exploded on the rock, was not a test of negligence. This testimony was not competent. Hale's testimony that the rock broke in the center, etc., should have been excluded. Where part of a conversation, or writtten statement is introduced by one

party, the other is entitled to have all that was said or written on the subject introduced.

4. Defendant's peremptory instruction should have been given. The testimony fails to show carelessness and negligence in failing to exercise ordinary care to protect plaintiff from danger, etc. The fact that plaintiff was not informed that the rock had been dynamited is not charged as an act of negligence. Nor was it proven that by dynamiting the rock it was made "weak, insecure and unsafe for those working near it," etc. The testimony fails to show that dynamiting the rock was the proximate cause of the injury as alleged. The burden was on plaintiff to prove the acts of negligence alleged and that this was the proximate cause of his injury. 116 Ark. 82; 105 *Id.* 161; 138 S. W. 538; 70 So. 467; 88 S. W. 767; 96 *Id.* 1045; 190 Fed. 717; 65 So. 981; 133 N. W. 142; 163 N. Y. 527; 42 Mich. 41; 48 S. E. 508; 133 N. Y. 659.

5. It was error to give instruction No. 1 for plaintiff. It should have been modified as asked by defendant. The court also erred in refusing the instruction asked by defendant. See Labatt on Master & Servant, § 1177; 67 Fed. 507; 82 Ark. 499.; 96 *Id.* 206.

6. The motion to dismiss should have been sustained. Kirby's and Castle's Digest, § 929 and § 7150.

7. The damages are excessive.

*Ponder & Gibson, R. W. McFarlane* and *Pace, Seawell & Davis,* for appellee.

1. The order of the judge in overruling the motion for a new trial and extending the time for filing the bill of exceptions and granting an appeal were without authority and void. The statute permitting the judge in vacation to act on a motion for new trial, if valid, only applies to cases where the verdict was rendered within three days of the *final* adjournment of court. Kirby & Castle's Digest, § 7657. However, this statute is invalid because it gives a judge the power and authority of a court in vacation and vests him with judicial powers.

Const. Art. 7, § 14. The appellant's abstract is not sufficient for the reason that the motion for new trial is not sufficiently set forth; it is too general. Nor does it identify the instructions alleged to be erroneous.

2. The petition to remove was properly refused. 48 Ark. 507; 107 *Id.* 512.

3. There was no error in refusing the continuance, nor in failing to postpone the trial. There was no abuse of discretion. 82 Ark. 105; 99 *Id.* 582; 71 *Id.* 62; 40 *Id.* 114. Due diligence was not shown. 71 Ark. 65; 84 *Id.* 81; 121 *Id.* 160; 95 *Id.* 291; 147 S. W. 459; 110 Ark. 408; 86 *Id.* 317; 80 *Id.* 376; 94 *Id.* 538.

4. There was no error in the admission or rejection of testimony. Timely objections were not made. 9 Ark 389; 79 *Id.* 204; 78 *Id.* 220. However, the evidence objected to was competent and that excluded incompetent.

5. The evidence substantially supports the finding and the peremptory instruction was properly refused. It is the duty of the master to warn the servant of any increased danger caused by a change in the working place, and a neglect to do so renders him liable where such change increases the hazard and is the proximate cause of the injury, as here. 103 Ark. 618; Sherman & Redf. on Negligence, p. 625; 78 Ark. 213; 111 *Id.* 486; 3 Labatt on Master & Servant, § § 1146, 924 and notes. There is no error in either the giving or refusal to give the other instructions.

6. Appellee did not assume the risk. 124 Ark. 586.

7. The motion to dismiss was properly overruled. The question of service was waived. 115 Ark. 524.

8. The verdict is not excessive. The jury were moderate under the evidence.

McCULLOCH, C. J. The defendant, Central Coal & Coke Company, is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business at Kansas City, Mo., and it was, at the time of the occurrence which forms the subject-mat-

ter of the present litigation, and is now engaged in operating coal mines in the State of Arkansas, in one of which the plaintiff, W. E. Graham, was employed as a miner. The plaintiff received very serious personal injuries while he was shoveling coal in one of defendant's mines, the injury being caused by the falling of a rock which had formed a part of the roof of the room in which plaintiff was at work.

This is an action to recover damages caused by alleged negligence of the defendant in rendering the working place unsafe without giving notice to plaintiff of the change in the condition of his working place. A trial before a jury resulted in a verdict in favor of plaintiff' for the recovery of a large sum of money as compensation for his injuries.

The first question presented is whether or not the motion for a new trial and the bill of exceptions were filed in apt time and acted on by the court so as to bring before us for review the proceedings in the trial court. The action was instituted and tried in the circuit court of Lawrence County, for the Eastern District, which sits at Walnut Ridge. The trial was begun on October 20, 1916, and was concluded on Saturday, October 21, which was the last day of the term, unless there was an adjournment over to another day after the completion of the term of court in another county as fixed by law to begin on Monday, October 23. At the request of defendant, the court made an order allowing defendant to present its motion for a new trial within ten days from that date, and then an order of adjournment was taken over to Monday, January 29, 1917, which was the day fixed by law for opening a term of court in Jackson county, one of the counties in the same judicial circuit. Defendant filed a motion for new trial with the clerk of the Lawrence Circuit Court on October 24, which has never been acted on by the court, and also presented another motion for new trial to the circuit judge in vacation on November 1, after due notice to plaintiff's counsel, and the judge made an endorsement on the motion

to the effect that it was overruled and granting an appeal to the Supreme Court, and allowing ninety days within which the bill of exceptions could be filed. That motion, with the endorsement thereon of the circuit judge was filed with the clerk of the Lawrence Circuit Court on November 2, and has been brought up in the transcript, together with the bill of exceptions, which was filed within the ninety days allowed.

A statute of this State governing presentation of motions for new trial in civil actions at law contains the following provision:

"Provided, that where the verdict or decision is rendered within three days of the expiration or adjournment of the term, a motion for a new trial, with an alternative prayer for appeal to the Supreme Court in case said motion be overruled, may be presented, upon reasonable notice to the opposing party or his attorney of record, to the judge or chancellor, or his successor in office, of the district in which said verdict or decision was rendered, wherever he may be found, at any time within thirty days, from the date of the verdict or decision, and such judge or chancellor shall pass upon said motion and endorse his ruling thereon, upon the back of the motion, either granting the motion or overruling same; and if said motion be overruled he shall also endorse upon said motion, his order granting an appeal to the Supreme Court, and his further order specifying a reasonable time allowed in said cause for filing a bill of exceptions. Upon filing such motion and the judge's order thereon, with the clerk of the court where the cause is pending it shall become a part of the records and files of the cause, and shall have the same legal effect as if same had been filed in term time, as now provided by law." Kirby's Digest, sec. 6218, as amended by act of May 31, 1909, p. 890.

(1-3) The statute, prior to the amendment just referred to, required that a motion for new trial be filed during the term, except on certain grounds not involved

in the present inquiry, and the contention of counsel for plaintiff is that the amendment whereby there was an attempt to authorize a circuit judge in vacation to rule on motions for new trial is void.  The argument is that it is an attempt to confer judicial power on the judge instead of on the court, and that for that reason the statute is void.  We do not agree with learned counsel in this contention, for there has been no attempt on the part of the law-makers to change the source of judicial power.  Of course, the circuit court in ruling on the motion for a new trial and granting an appeal to the Supreme Court acts judicially, but it is within the power of the Legislature to regulate the manner in which that power may be exercised by the judicial officer who constitutes the court. The action of the judge pursuant to the terms of the statute is, after all, that of the court, notwithstanding the fact that the authorized acts are performed at other than stated times and places.  In other words, we think that the Legislature may authorize the circuit judge to act for that court in a judicial capacity under any circumstances under which the adversary parties could have an opportunity for receiving notice, and that that would be the exercise of the judicial power by the circuit court created by the Constitution.  There is nothing in the Constitution of the State which requires that every judicial act shall be performed at a regular term of the court.  The only positive command of the Constitution in that respect is that circuit courts "shall hold their terms in each county at such times and places as are or may be prescribed by law" (Art. VII, Sec. 12), which is construed to mean that there must be at least one term of court in a county in each year. *Parker* v. *Sanders, Judge,* 46 Ark. 229. This does not restrict the power of the Legislature with respect to authorizing the exercise of judicial power at other times or places. *Jones Ex parte,* 27 Ark. 349; *Walker* v. *State,* 35 Ark. 386.

(4-6)  The next contention of counsel is that the statute authorizes motions for new trial to be presented

after the end of the term only in the event that "the ver-,dict or decision is rendered within three days of the expiration or adjournment of the term," and that in this instance there was no final adjournment until the date to which the court adjourned over, towit, January 29, 1917. It is true that this feature of the statute applies only to a final adjournment within three days after the return of the verdict in a given case, and not to an adjournment over to a fixed date. But we are of the opinion that an adjournment over to a day fixed by law for the holding of court in another county in the same circuit is void, and that the term lapses by virtue of the adjournment. The attempt of the court to adjourn over to an impossible date was, in other words, tantamount to a final adjournment. Two courts in the same circuit presided over by one judge can not be held on the same day, and an attempt by the judge of a circuit to do that, or even for the Legislature to attempt to authorize it is futile. Even if it were physically possible for the judge to reach both places on the same day, it can not legally be done because the law does not take account of different parts of days in fixing the time for holding court. *Williams, Ex parte,* 69 Ark. 457. The statutes of the State provide that a circuit court shall continue in session from day to day until the business is disposed of (Kirby's Digest, § 1320), but the court can not stand open from day to day so as to conflict with the holding of court in another county in the same circuit, and an adjournment without specifying a day on which the court will reconvene without interference with the courts in other counties is void, and constitutes an expiration of the term. *Roberts & Schaeffer Company* v. *Jones,* 82 Ark. 188. Such is also the effect of an adjournment to a date which conflicts with the holding of another court.

(7)     Defendant filed its motion for new trial with the clerk on October 24, but ignored that motion and presented a new one to the trial judge on November 1, that being the one which was acted on by the judge and made

a part of the record. The manifest purpose of the law-makers was to extend the power of a judge acting as the court on motions for new trial for a period of thirty days after final adjournment as to cases in which verdicts are rendered within three days of the adjournment. This extension is for the purpose of enabling the court to dispose of motions for new trial in those cases where in the haste of the closing of the term the court had no time to do so before the final adjournment. The power of the court is, under the statute, as complete, so far as concerns the disposition of motions for new trial, as if the term had not ended, and in this instance the court could entertain a motion for new trial presented, even though another had been filed in the office of the clerk of the court. In fact, the statute does not seem to contemplate the filing of a motion with the clerk until after it is acted upon by the judge. The practice established by the statute is to first present the motion for new trial to the judge and after the latter has endorsed his orders with respect to granting or overruling the motion, the granting of an appeal to the Supreme Court and the extension of time for filing the bill of exceptions, then the motion with its endorsement is to be filed with the clerk, and thereby becomes a part of the record in the case. This case falls, we think, within the terms of the statute, which it seems were literally complied with, and the motion for new trial, and the bill of exceptions properly bring before us for review the questions now argued in the briefs.

The defendant appeared in apt time in the Lawrence Circuit Court and presented its petition and bond for removal of the cause to the United States District Court for the Western District of Arkansas, and the court refused to grant the petition for removal. It appeared upon the face of the record that the plaintiff was a citizen and resident of Sebastian County, which was situated within the Western District of the Federal Court, Lawrence County being situated in the Eastern District of Arkansas, and that the defendant, a Missouri corpora-

tion, was then maintaining a place of business in Sebastian County. The contention of counsel for defendant is that these facts are sufficient to bring the cause within the Federal statutes which authorize a removal of a cause from a State to a Federal court on the grounds of diversity of citizenship. We have decided to the contrary in two cases. *St. Louis & San Francisco Rd. Co.* v. *Kitchen,* 98 Ark. 507; *Chicago, Rock Island & Pacific Ry. Co.* v. *Smith,* 107 Ark. 512. The decisions in those cases were based on what was conceived to be the rule established by the Supreme Court of the United States in *Ex parte Wisner,* 203 U. S. 449, although the decision in that case did not involve precisely the same facts as in our cases. The *Wisner* case was discussed and its force to some extent impaired in later decisions of the Supreme Court of the United States, which we cited in our opinion, but we reached the conclusion that the impairment of the force of that decision was not sufficient to eliminate the point thought to be controlling in the cases before us. There has been no decision of the Supreme Court of the United States on that subject since our former decisions were rendered, and we see no reason to change the position we have taken on the question. It is insisted, however, that the facts of the present case are a little different from those involved in our former decisions, in that the defendant, although a Missouri corporation, was operating its mines and maintaining a place of business in the Western Federal Court District of Arkansas. That fact does not distinguish the present case from those which we have already decided, nor is it important where the injury, which forms the basis of the cause of action, occurred.

(8) The Federal statute allows the removal of a cause only when it is one which could have been originally instituted in the Federal court of the district where it is pending in the State court, and if it is brought in the Federal district, where neither the plaintiff nor the defendant reside, it can not be removed. It is immaterial

whether or not the defendant may be doing business in the district. If the doing of business in the district be deemed as an equivalent to citizenship within the meaning of the Federal statute, then the right of removal would not exist at all, even if it were in the district of the plaintiff's residence. Our conclusion, therefore, is that the circuit court was correct in refusing to grant defendant's petition for the removal of the cause to the Federal court.

(9)   The next assignment of error is as to the ruling of the court in refusing to grant a continuance to allow further time to procure witnesses, and also in refusing to grant a short postponement during the progress of the trial to await the coming of witnesses, said to be *en route* to attend the trial. Original process in the case was served on defendant's agents in Sebastian County on September 16, 1916, and the next term of the Lawrence Circuit Court for the Eastern District convened on October 9. It appears that counsel for defendant did not secure a copy of the complaint until September 26, and no preparations for the trial were apparently made before the term began. The attorneys in the case on both sides appeared on the first day of the court and defendant's petition for removal was filed and presented, and was overruled on the following day. On that day counsel for defendant filed a motion for a continuance of the cause until the next term, setting forth the fact that he had been engaged in trials in other courts almost continuously since the institution of this action, and had had no opportunity to prepare for the trial of the cause, and that no witnesses had been summoned. The names of none of the witnesses were set forth in the motion for continuance. On the contrary, it was stated in the motion that counsel had not been able to see any of the witnesses or to ascertain who any of them were, or where they resided, but that he did not believe the attendance of the witnesses could be obtained at that term of the court, as many of them lived over a hundred miles distant from the court,

and that some of them were nonresidents. The court overruled the motion but postponed the trial until October 19, on which date the parties again appeared by attorneys and defendant filed an additional motion for continuance of the cause in order to procure the attendance of a number of witnesses whose names were stated in the petition. All of the witnesses were residents of Arkansas, and most of them of Sebastian County, except two, one of whom was temporarily absent from the State, and the other resided in Oklahoma. It was stated in the motion, in substance, that it was expected to prove by the absent witnesses the customs prevailing in the locality in which the injury occurred with respect to the duty of miners in keeping their working places in a safe condition, and that in order to do so to place props in the rooms, and watch from time to time while at work to prevent any of it from falling, and also the duty of the miner to call on the employer to remove loose rocks which were too heavy to be removed by the miners themselves. It was not alleged in the motion that the witnesses would testify to any specific facts concerning the injury, but the testimony was confined entirely to the expert knowledge of the witnesses with reference to the customs which control the miners, or to which they usually conformed in performing their work in the mines. Three of the witnesses had held the official position of State Mine Inspector, one of them being then the incumbent of that office. Five of the witnesses were employees of the defendant at that time. The witnesses named in the application had been summoned, but their testimony tended to show that the men had previously announced their purpose of not attending the trial for the reason that the defendant had not made any provision for their expenses. It appeared also from the evidence adduced on the hearing that during the interim between the postponement and the date of the trial, counsel for defendant had an interview with the witnesses at his office in the city of Fort Smith, and that statements had been taken from some of the wit-

nesses in the case, and one of the witnesses summoned by defendant, one Walker, was in attendance at the trial. He was the only eye witness summoned by defendant. It was also shown that when the court made the order of postponement on October 10 one of the counsel for plaintiff in open court announced to defendant's attorney that he would waive notice of the taking of depositions and join the defendant's attorney at any place where he desired to go to take the depositions of the witnesses. The court was warranted in drawing the inference that defendant had done nothing toward getting ready for trial except to interview the witnesses, and cause subpoenas to be issued for them. There was no preparation made at all for the taking of depositions of the witnesses who could not attend. The circumstances tend to show an effort rather to postpone the trial than to get ready for it, and we can not see that the court abused the discretion vested in it in such matters when it refused under those circumstances to further postpone the trial of the case. It is true that the defendant was called on to defend itself nearly three hundred miles by usual route of railroad travel from the scene of the injury set forth in the complaint. But even if the defendant could not be held to any degree of diligence in preparing for trial before the petition of removal of the cause was overruled, we are unable to see that it constituted an abuse of discretion for the court to limit the time of preparation thereafter to ten days. There were very few eyewitnesses to the injury, and all of them were present and testified in the trial. It was only expert testimony that defendant desired, and it is improbable that defendant had any difficulty in finding and procuring the attendance of witnesses in the Arkansas coal fields which are being operated in Sebastian County, where this injury occurred. If defendant desired to obtain expert testimony from witnesses holding official positions or those who had formerly held such positions, extraordinary effort should have been resorted to to procure such testimony and without waiting until the last

moment to determine whether or not it would be convenient for those witnesses to attend the place of trial.

The introduction of testimony at the trial was concluded about 10 o'clock on Friday, October 21, and counsel for appellant, after announcing to the court that he had no other witnesses to introduce, stated that he had attempted to procure the attendance of other witnesses (without naming them) and was informed that those witnesses were *en route* to the place of trial and had reached Little Rock on that morning, but that the train on which they were expected to travel to Walnut Ridge was one hour and twenty minutes late. He stated that he had been unable to procure the attendance of any of the witnesses who were embraced in his motion for continuance of the cause, but had procured other witnesses, but had not seen the witnesses and did not know what their testimony would be. It is not definitely stated in the record when the train was expected, but defendant's motion was to postpone until the 1 o'clock train came in—whether that meant that 1 o'clock was the hour the train was expected to arrive according to schedule, or according to the delay the record does not show. At any rate, there was a request for postponement until the afternoon. The court announced that the request would be denied on account of the closing of the term on that day. The jury was then sent out from the court room, and counsel on both sides proceeded with their requests to the court for instructions, and after that was done counsel for defendant renewed his request for a postponement until afternoon, and stated what he believed he could prove by the witnesses concerning the duty of plaintiff to make examination in his working room. The court again overruled the requests, and stated that the remaining time of the term of court was too short to admit of further postponement, it being then after 11 o'clock. The trial was proceeded with and concluded during the afternoon, resulting, as before stated, in a verdict in favor of plain-

tiff. It does not appear from the record whether or not the witnesses ever arrived at Walnut Ridge.

It was proper, of course, for the court to take into consideration the possibility of a postponement carrying the cause over beyond the last day of the term. It is true the court could have adjourned over to another day beyond the sitting of the court in some other county and then called the jury back to conclude the trial, but it might well be thought that such an interruption would work great inconvenience to all parties connected with the trial, and that it was not advisable to postpone the final consideration of the cause by the jury for several weeks, when the effect of the testimony or argument of counsel would be obliterated from their minds. The circumstances at least presented a question for the exercise of the court's discretion. Since the court had correctly decided that the defendant had not exercised proper diligence to get its witnesses there for the trial, it follows that there was no error in refusing to postpone the trial for even a few hours on the last day of the term. Our conclusion, therefore, is that no abuse of discretion on the part of the court appears in overruling the original motion, or the request for postponement on the day of the trial.

The evidence was sufficient to sustain the verdict. The miners worked together in pairs—two of them working in a room—and as the taking down of coal constantly changed the condition of the rooms in the mines and renders them dangerous from time to time, it was necessarily the duty of the miners themselves to make their working places safe. The statute requires the owners or operators of mines to furnish props to support the roof, but it is the duty of the miners to call for the props when needed and to put them in. The evidence in the present case shows that plaintiff and one Walker were working together in a room, and on Friday afternoon of a certain week in January, 1916, a large rock forming a part of the roof of the room in which they were working partially

fell down. This resulted from the taking down of coal. The slab of rock was about fifteen feet long, five feet wide and fifteen or sixteen inches thick, and it was necessarily very heavy. When it fell the large end rested on a stratum of coal and the small end at the roof was supported by props. This left the heavy rock lying in a slanting position with the smaller end elevated to the roof with props under it. The rock had been gradually coming down for some time when it fell into that position but still rested on the props which the plaintiff and his companion had put under the roof. It was the business of the miners to take down the coal, and, of course, they were required to take notice of the fact that the rock had fallen, which they did. It was dark in the working place and the light from the miners' lamps was all that they had to furnish light during their work and in examination of the condition of their room. Saturday morning when plaintiff and his fellow-worker returned to work they discovered the fallen rock and made careful examination to determine whether or not it was sufficiently secure to justify them in working around it, and after a careful examination they decided it was safe to proceed with their work, and did so. The rock was too large to be removed otherwise than by being blown to pieces with dynamite, and, as the miners only used black powder for blasting in the mines, they had no dynamite to use in blowing down the rock. They worked in the room about the fallen rock all day Saturday, and left the rock in that condition when they departed from the mines at the close of the day's work. They did not return to work Monday on account of water being in the mine, but returned to work on Tuesday morning. On Saturday they asked the representative of the mine owner to furnish them with dynamite with which they could blow down the rock, but that was refused. The foreman and the man denominated the rock boss decided on Sunday afternoon to blow down the rock with dynamite, and they sent two men into the mine for that purpose. The men carried eight sticks of dynamite

and placed them on top of the rock, five near the center
and the other three near the end of the rock where it was
resting on the props, and after lighting the fuse they de-
parted from the mine without waiting to ascertain the
effect of the blast, which went off without in fact breaking
down the rock. When the plaintiff and his companion re-
turned to the mine, and to their working room Tuesday
morning they observed that the rock was apparently in
the condition they had left it Saturday afternoon before.
Plaintiff testified that he did not know that an effort had
been made to blow down the rock and there is no testi-
mony in the record showing that he did in fact know it.
No witnesses testified that he was told of it. Walker, the
other man working with plaintiff, knew that an effort had
been made to blow down the rock, but he did not inform
his companion of that fact. Plaintiff testified that he and
his companion examined the rock the best they could in
the dim light of the pit lamps, which was all the light they
had available, and that they made such examination as
could be done under those circumstances. After making
an examination of the rock, and finding it apparently se-
cure, and in the same condition it was when they left the
mine Saturday afternoon, they proceeded to work, and
the rock fell down, throwing out the props, one of which
struck plaintiff and inflicted an injury which the testi-
mony shows conclusively is permanent.

(10)   Now, it is conceded that the duty rests upon
a miner to make his working place secure as it becomes
more dangerous from time to time as the coal is removed,
but plaintiff asserts the right to recover damages on the
ground that without his knowledge his employer had ren-
dered the working place insecure, and that it constituted
negligence to put in a load of dynamite and attempt to
blow down the rock without exercising care to ascertain
the result of the blast, and to inform plaintiff of the
change in the condition of his working place. We are of
the opinion that a cause of action was stated in the com-
plaint and made out by the evidence. There is no charge

of negligence on the part of defendant involved in failing to blow down the rock, or in the method of putting in the charge of dynamite. The court by an instruction took those questions from the jury and submitted solely the question of negligence in failing to warn the plaintiff of the increased danger by reason of the attempt to blast down the rock.

It is contended that the charge of negligence referred to is not clearly set out in the complaint, but we think that the language of the complaint is sufficient to constitute a charge of negligence in that respect and the proof on the part of the plaintiff was directed solely to that charge. It follows, therefore, that there was sufficient evidence to sustain the verdict.

(11). There are numerous assignments of error with respect to the instructions given, and some of those requested by the defendant which were refused. In the first place, specific objection was made to the first instruction, given at the instance of the plaintiff, which in substance limited the plaintiff's right to recovery to the finding of fact by the jury that "he did not know that dynamite had been exploded on said rock, if any, or could not have known of this by the use of ordinary care on his part, and that he was unaware of the unsafe, defective and dangerous condition of said rock." Defendant asked that the instruction be modified so as to insert the words "and inspection" after the words "ordinary care," so as to read "ordinary care and inspection on his part." We think that the term "ordinary care" was the appropriate one to use, and it correctly measured the duty of the plaintiff with respect to his own safety. It was a question for the jury under the circumstances as to what constituted ordinary care, and how, and to what extent an inspection should have been made in order to secure safety. It was the duty of plaintiff to make his own working place safe, but he was not bound to anticipate negligent acts of his employer in rendering his working place additionally insecure without notice to him.

Error is assigned in the court's refusal to give instruction "C," which told the jury, in substance, that the duty of defendant, as master, to furnish its servants a reasonably safe place to work should not apply to this case. This instruction was correctly refused, because it might have misled the jury, for it was the duty of the master to refrain from any act which would render the working place more insecure, or in taking any steps which might render it more insecure without warning plaintiff. In that respect the duty rested on the defendant to contribute toward making the working place safe, and the instruction was properly refused, because it might have been considered as being in conflict with that idea.

The real issue in the case was correctly submitted to the jury, i. e., to determine whether or not the place was rendered insecure by the abortive effort to blow down the rock with dynamite, and whether it constituted negligence under those circumstances for other servants of defendant to fail to warn plaintiff of the added danger.

There was no error in refusing to give requested instruction "D," which told the jury that there was no evidence to sustain the charge of negligence on the part of defendant in failing to tear down the rock after the same had been dynamited and thereby became insecure.

The court gave an instruction, at defendant's request, telling the jury that there was no charge involved on the part of defendant for improperly firing the dynamite or attempting to blow down the rock, and that there was no liability against defendant from the fact that the explosion did not tear down the rock, and that sufficient dynamite was not used to tear it down. That instruction embraced all that defendant was entitled to on the subject, and it would have been an improper encroachment on plaintiff's right of action to have told the jury that they could not consider the fact, for any purpose, that the defendant had failed to tear down the rock.

Instruction "F," requested by defendant, would have told the jury unqualifiedly that it was the duty of

plaintiff, under all circumstances, to protect himself from the fall of rocks in the room, and the court properly refused to give it, for it was erroneous, when applied to the particular issues in the case whether or not the defendant was negligent in failing to warn plaintiff of change in the condition during the time he was out of the mine.

It is earnestly insisted that the court erred in refusing to give instruction "K," which reads as follows:

"If the jury believe from the evidence that plaintiff and his partner, Walker, placed shots in their working place, which were fired Friday night; that when they returned to work Saturday morning they found the rock which afterwards fell upon plaintiff partly down, one end being on top of the bottom bench of coal, the other held up and supported by timbers; that they worked in said room and around this rock Saturday removing coal; that when they left Saturday they put shots in their working place which were fired before they returned to work Tuesday morning; that a dynamite shot had been exploded on top of the rock between the time they quit work Saturday and resumed work Tuesday but plaintiff did not know of this; that the rock was apparently in the same position it was on Saturday but plaintiff looked at the rock but did not sound it; that plaintiff and his partner continued to work about and around the rock, removing the coal that had been loosened by previous shots, until the rock fell, and that in consequence of the conditions herein set out, if proven, and the progress of the work as shown by the evidence, the conditions as regards an increase or lessening of safety was changing, so that the jury are unable to determine what caused the rock to fall, then plaintiff can not recover.

"And you are further instructed that in such working place and under the circumstances and conditions herein set out, if shown by the evidence, the doctrine that the defendant should use ordinary care to furnish plaintiff a reasonably safe place to work does not apply, but

he assumed the risk of all danger of which he knew or would have known by the exercise of ordinary care on his part.''

The vital part of the first paragraph of that instruction is where it stated that if the jury were ''unable to determine what caused the rock to fall, then plaintiff can not recover;'' and it was fully covered by instruction numbered 10, which the court gave at defendant's request. The last paragraph of instruction ''K'' was erroneous because it invaded the province of the jury in stating as a matter of law that under the circumstances recited the defendant owed no duty to its servant to make the working place safe and that the servants assumed the risk under those circumstances.

In other instructions given at the instance of defendant, as well as those asked by plaintiff, the jury were told that it was necessary, in order for the plaintiff to recover, to first find that the dynamiting of the rock caused it to fall at the time plaintiff received his injury, and not the digging out of the coal, and that the jury could not resort to conjecture in order to arrive at a conclusion on that issue.

The jury were also told that the plaintiff could not recover unless he exercised ordinary care to determine whether or not the rock was insecure at the time he went to work Tuesday morning. Another instruction asked by the defendant would have told the jury that notice to his companion, Walker, of the fact that the dynamite had been used freed the defendant of any charge of negligence, but we think the instruction was properly refused, for defendant owed the duty to plaintiff to exercise ordinary care to inform him of the increased danger, and it was a question for the jury to determine whether or not it was sufficient in the exercise of ordinary care to inform only one of the men working in the room. There were other refused requests for instructions, but we find no error in any respect.

There is an assignment in regard to the ruling of the court in permitting plaintiff to interrogate witness Walker on cross-examination concerning a part of a former written statement made concerning the injury. Walker was introduced as a witness by the defendant, and on cross-examination, after the witness had been examined concerning the former statement, the plaintiff read to the jury a part of the statement which related to whether or not he (witness Walker) had told the plaintiff about the men going into the mine Sunday for the purpose of blowing down the rock, or whether plaintiff was in hearing distance and heard the conversation of the witness with the men when it was stated that they had been into the mine. Defendant insisted on having the remainder of the statement read to the jury, but it is apparent that the remainder of the statement contained no contradictory matter, and it was immaterial. The only material part of the statement was that which related to the question of notice to the plaintiff, and we think the court committed no error in confining the testimony to that part of it.

The jury awarded a very large sum as damages, but the only attack made on the excessiveness of the verdict is that the evidence shows that the plaintiff was himself negligent, and that the jury ought to have diminished the damages correspondingly. The answer to that is that the question of contributory negligence was submitted to the jury, and there was a finding in favor of plaintiff, which necessarily acquitted him of any charge of contributory negligence. The evidence was, we think, sufficient to justify the assessment of damages made by the jury.

We find nothing in the record which constitutes error calling for a reversal of the cause, so the judgment is affirmed.