ALIX COAL COMPANY *v.* NELSON.

Opinion delivered December 20, 1920.

MASTER AND SERVANT—ASSUMED RISK.—A coal miner engaged in the day shift in driving an entry in a coal mine, and who knew that the night shift had been blasting down the roof near his working place, in view of the fact that it was his duty to look after and secure the safety of such place, will be held to have assumed, as a risk incident to his employment, that the rock in the roof of his working place might have been loosened and sprung by a false shot in the entry made by the night shift.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran,* Judge; reversed.

*J. D. Benson* and *Pryor & Miles,* for appellant.

1. Appellant was entitled to a directed verdict. Nelson was an experienced miner and knew the danger and assumed the risk. 76 Ark. 72; 97 *Id.* 486; 98 *Id.* 145; 87 N. W. 736; 114 S. W. 785; 50 N. E. 36; 71 S. W. 80.

2.  The court erred in refusing the instructions asked by defendant.

*Dave Partain* and *Evans & Evans,* for appellee.

The court correctly refused the peremptory request for a directed verdict, as the evidence shows that, by reason of the negligent acts and omissions of defendants, its agents and servants, the intestate was injured and his death caused thereby.  There was legally sufficient evidence to send the case to a jury, and the verdict is sustained by the evidence.  The instructions, given correctly, state the law of the case, that Nelson did not assume the risk of injury from the negligence of empolyer, unless he knew and appreciated the danger.  The instructions given have been approved by this court.  136 Ark. 467; 232 U. S. 94.  This case is very similar to 129 Ark. 550. Negligence of defendant was alleged in this complaint and shown by the evidence and the instructions given were correct, and those refused were not the law.

HUMPHREYS, J.  Appellee, administratrix of the estate of T. J. Nelson, deceased, instituted suit for the use and benefit of his estate, for herself as widow, and her five minor children, in the Franklin Circuit Court, Ozark District, against appellant for damages in the sum of $30,000 on account of the alleged negligent killing of appellee's intestate by a falling rock, while engaged in taking down coal in the process of driving the fourth east entry of the slope in appellant's coal mine.  The charge against the company was negligence in brushing down the roof of the entry which consisted in blasting down two or three feet of rock above the top layer of coal after the coal had been removed so as to make room in the entry to haul out the coal.  The particular act of negligence alleged was putting in a faulty shot which sprung or loosened the rock constituting a part of the roof over the working place of said intestate, which caused it to fall and kill him.

Appellant filed answer, denying negligence on its part, and pleading assumption of the risk by appellee's intestate.

The intestate was killed instantly, and, for that reason, the cause for the use and benefit of the estate was not submitted.

The cause for the use and benfit of the widow and minor children was submitted to the jury upon the pleadings, evidence and instructions of the court, which resulted in a verdict and judgment against appellant for $2,000.

At the time appellee's intestate, T. J. Nelson, was killed, he was engaged by employment in driving an entry in the coal mine of appellant. Men composing a night shift and day shift were doing the work. Nelson was a member of the day shift. It was the duty of the day shift to remove the coal and of the night shift to blast down two or three feet of the roof after the coal had been removed, so as to make it high enough to haul out the coal. Blasting out the roof was called "brushing." The company employed Walter Leverett and Will Evans to do the brushing. Nelson worked on Friday, August 29, 1919, and, before leaving in the afternoon, put shots near the end of the entry in the first or lower stratum of coal to blow it down. These shots were fired after he left, by appellant's shot firers, which shots, when fired, blew down the first stratum of coal. This left the second and third strata of coal in place. He did not return to his work until Tuesday morning, September 2. During the interim, Walter Leverett and Will Evans were engaged in brushing in the entry two nights and brushed to within a few feet of where Nelson would begin to take down coal when he returned to work. Nelson knew that they had been brushing in his absence and by ordinary observation could have seen how near the brushing came to his working place. The last shot put in by Walter Leverett and Will Evans was just above the right hand roof rib of the entry and several feet from the working place

of Nelson. Some put it as low as three feet and others as high as seven feet. The hole which had been drilled for the shot was two and one-half or three feet long, pointing in the direction of the face of the coal, or toward Nelson's working place. When this shot was fired, it blew down only about half the rock and substance adjacent to it which it should have blown down. This was called a false shot. They are not uncommon in the work of brushing. The evidence adduced by appellee tended to show that the force of the shot spent itself in a forward direction instead of blasting all the rock adjacent to it in a downward direction, and, on this account, sprung or loosened a rock more than four feet wide and six feet long over Nelson's working place and caused it to fall on and kill him, when he wedged down the third or top stratum of coal immediately under the rock; that two strata of coal were in place under the sprung rock in Nelson's working place; that, by inspection of the hole containing the false shot, the loosened or sprung condition of the rock, which fell on Nelson, would have been discovered.

The evidence adduced by appellant tended to show that, while the last shot put in by Walter Leverett and Will Evans was a false shot, its force did not bound forward and spring or loosen the rock over Nelson's working place; that all the rock and other material adjacent to the shot, which was loosened when it fired, was removed by said parties immediately after the shot was fired; that the rock which fell upon and killed Nelson was what is known as a hogback or slip rock, held in place by the coal under it, and fell when Nelson wedged the coal down which supported it.

The undisputed evidence showed that it was the duty of the company to look after the brushing in the entry by its night shift; that, when its employees drilled a hole in the roof of the entry and shot it down with dynamite, the duty devolved on it to take down from the roof in the entry all loose rock occasioned by the shot; that it

was the duty of Nelson to look after and secure the safety of the roof of his working place.

Nelson returned to his work Tuesday morning and began to wedge coal down from the roof of his working place. In the progress of the work, the rock, to which the coal was attached, fell on and killed him. The evidence was ample to sustain the amount of the judgment, if any liability existed against appellant.

The cause was submitted to the jury upon the theory that it was appellant's duty to use ordinary care to furnish Nelson a reasonably safe place in which to work and to make reasonable inspection to see that the place was reasonably safe; and that Nelson only assumed the risk incident to normal conditions, or the conditions as he changed them from hour to hour in the progress of his work, but that he did not assume dangers or hazards occasioned in the roof of his working place by a false shot near it in the entry proper. A majority of the court are of opinion that the facts in the case bring it within an exception to the general rule making it the duty of a master to use ordinary care to furnish a reasonably safe place to work—the exception being that one engaged in blasting and excavating in his working place in a mine assumes the risks incident to his employment and that the rock in the roof of Nelson's working place, loosened or sprung by the false shot in the entry, was a hazard or danger incident to his employment, as the duty on appellant to inspect for dangers entailed by the false shot was limited to the entry proper. *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140; *St. L., I. M. & S. Ry. Co.* v. *Baker,* 110 Ark. 241. The majority distinguish the instant case from the case of *Central Coal & Coke Co.* v. *Graham,* 129 Ark. 550, on the ground that in the instant case Nelson knew that the night shift had been blasting down the roof in the entry near his working place during his absence, and it was not an uncommon thing for the force of false shots to bound forward and spring or crack rocks six or seven feet away from it; whereas, in

the Graham case, the shots had been fired in his absence without any knowledge on his part and without making any visible change in the situation.

Mr. Justice HART and the writer are of the opinion that the case was submitted upon the correct theory; that Nelson's duty of inspection was confined to his own working place and not to false shots fired in the entry proper, which created additional hazards above the roof of his working place, not discoverable by reasonable inspection within the confines of the place. In other words, we think it was the duty of appellant to ascertain the effect of the false shot fired in the entry and to remove or afford protection against dangers occasioned thereby, or at least to have notified Nelson of the danger resulting therefrom to the roof of his working place so that he might have propped the rock which fell and killed him. We also think that, as no duty rested upon Nelson to investigate the effect of the false shot in the entry and, as he did not know that such a shot had been fired, the rule in the Graham case is applicable to the instant case.

In accordance with the view of the majority, the judgment is reversed and the case is remanded for a new trial.