FARELLY LAKE LEVEE DISTRICT v. HUDSON,

AND

FARELLY LAKE LEVEE DISTRICT v. AMERICAN INVESTMENT
COMPANY.

Opinion delivered April 19, 1926.

1. LEVEES—ASSESSMENTS—TIME OF FILING PROTESTS.—Under Acts
1917, p. 920, providing that any owner of real property within a
certain levee district, conceiving himself to be aggrieved by the
assessment of benefits in the district, shall present his complaint
to the chancery court "at its first regular, adjourned or special
session after publication" of the notice of filing of assessments,
*held* that protests of landowners were required to be filed at the
first regular or adjourned session of the court begun and held
after publication of the notice, but not at a session of the court
begun before its publication and continued thereafter.

2. LEVEES—ASSESSMENTS—DIRECT AND COLLATERAL ATTACK.—Where
the correctness of an assessment of benefits in an improvement
district is assailed on collateral attack in a suit brought after
expiration of the time allowed by statute, the presumption in
favor of the validity and correctness of the assessment is con-
clusive unless the assessment is arbitrary on its face and void;
but, where the suit is brought within the time allowed by statute,
the presumption of its correctness is not conclusive and may
be overcome by evidence that the assessment is incorrect, in
which case it is the duty of the court to set it aside or to correct it.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—
A chancellor's decree setting aside a reassessment of benefits in a
levee district will not be reversed when the appellate court is
unable to say that the chancellor was not justified in his con-
clusion.

4. LEVEES—ASSESSMENTS—DECREASING ASSESSMENT.—The original
assessment of lands in a levee district will not be decreased on a
reassessment where bonds of the district pledged its revenues and
the assessment cannot be reduced without impairing the obliga-
tion of the contract; nor where the statute authorized a reassess-
ment for the purpose only of paying the additional cost of the
improvement, and not for the purpose of reducing the original
assessment.

Appeals from Jefferson and Arkansas Chancery
Courts; *H. R. Lucas*, Chancellor; judgments modified.

*Rose, Hemingway, Cantrell & Loughborough*, for
appellants.

*Coleman & Gantt, Wooldridge & Wooldridge, Gibson & Burnett* and *Jno L. Ingram,* for Hudson.

*Gibson & Burnett, J. M. Brice, R. D. Rasco, T. J. Moher, John L. Ingram,* and *Botts & O'Daniel,* for American Investment Company.

McCULLOCH, C. J. The two cases indicated in the caption were tried separately below, one in the chancery court of Arkansas County and the other in the chancery court of Jefferson County, but they involved the same issues of facts and questions of law, with a single exception, and the two cases have been consolidated in this court for the purpose of disposing of them on appeal. Both cases involve the correctness of the assessments of benefits in an improvement district created by special statute for the purpose of constructing a levee along the east bank of the Arkansas River.

The district was organized under act No. 3 of the General Assembly of 1913, which was amended by act No. 170 of the General Assembly of 1917, and further by act No. 115 of the year 1919, the purpose of the district being to build a levee along the Arkansas River bank in Arkansas and Jefferson counties and to construct a dam with floodgates across the mouth of Bayou Meto, a stream which empties into the Arkansas River in Jefferson County. The organization of the district was completed and plans for the improvement were made, contracts let and bonds issued, and the greater portion of the levee was completed—about twenty-two miles in length—but about 1,000 feet of the levee was left short of completion, and the dam and floodgates at Bayou Meto have not been constructed. Money was borrowed and bonds issued in the aggregate sum of $1,342,000, which are still unpaid and outstanding.

The statute creating the district contained a provision that the assessment of benefits should not exceed twenty dollars per acre, and in the original assessment of benefits there was a horizontal assessment of twenty dollars per acre, with the exception for a few tracts peculiarly situated, and the aggregate amount of the

original assessment was $1,576,677. Work on the improvement was suspended on account of inability to raise additional funds without increasing the assessments, and the General Assembly of 1925 enacted a statute (act No. 356, session of 1925) authorizing districts situated as this one to complete the improvement and to reassess the property for the purpose of raising a sufficient amount to complete the improvement. This statute was interpreted in a recent decision of this court, and it was held that it repealed the limitation in a prior statute as to the maximum amount of assessments per acre. *Farelly Lake Levee District* v. *Hudson,* 169 Ark. 33. After the enactment of that statute, the board of assessors of the district proceeded to reassess the lands in the district, and added to the original assessment eight dollars per acre, with the exception of a few tracts not involved in the present controversy. The assessment lists were filed in accordance with the statute, and the appellees in these two cases, who are the owners of property in the district —some in Arkansas County and some in Jefferson County —instituted this action attacking the correctness of the additional assessments and seeking to set them aside.

The contention of appellees is that the original assessment of twenty dollars per acre was excessive, and that the additional assessment is not supported by the facts; that none of the lands involved in these two actions will be benefited by the improvement in excess of the original assessment of twenty dollars per acre. The issue was joined upon the allegations as to the excessiveness of the assessments, numerous witnesses were introduced before the court, and there was a final decree in favor of appellees setting aside the additional assessment. The district has appealed, and some of the property owners have cross-appealed on the ground that the court should have reduced their original assessments.

The recent statute, referred to above, authorizing the reassessment, contains a provision that the same "shall be made, advertised and equalized like the original assessment of benefits, and shall become final and incon-

testable after the lapse of the same time as the original assessment.'' The original statute creating the district, as amended by the act of 1917, *supra*, provided that, after the assessors of the district shall have completed the assessment of benefits and inscribed the list of assessments in a book to be kept for that purpose, they should deposit one copy thereof with the chancery clerk of Jefferson County and one copy thereof with the chancery clerk of Arkansas County, and that the clerks of said courts should ''publish for two weeks in some newspaper published and having a *bona fide* circulation in their respective counties, a notice which may be in the following form:'' The notice is, in effect, that the assessment of benefits has been filed in the office of the chancery clerk and is open to the inspection of all persons interested, and that at the first sitting of the chancery court of the county all owners of property within the district may appear and present complaint. The statute then continues as follows:

''Any owner of real property within the district and county who conceives himself to be aggrieved by the assessment of benefits or damages, or deems the assessment of any land in the district is inadequate, shall present his complaint to the chancery court of the county where such lands lie at its first regular, adjourned or special session held after the publication of said notice; and the court shall consider the same and enter its finding thereon, either confirming such assessment or increasing or diminishing the same; and its finding shall have the force and effect of a judgment, from which an appeal may be taken within thirty days, either by the property owners or by the commissioners of the district.'' Acts 1917, p. 920.

It is conceded that the protest of appellees who are owners of property in Arkansas County was filed within apt time, as prescribed by statute, but it is contended that the appellees who are owners of property in Jefferson County did not file their protests within the time specified by the statute.

The facts disclosed by the record with respect to the time for filing the protests were that, at the time of the maturity of the published notice in Jefferson County, the chancery court was then in regular session and continued in session for nearly two weeks thereafter, until final adjournment, without holding an adjourned session, and that the protest of the owners of the property was not presented until the next regular term. The question whether the protest of the property owners was filed within the time prescribed by the statute is important in the case, for it determines the nature of the attack upon the correctness of the assessment, whether direct or collateral. If the protest was filed in time, the attack upon the correctness of the assessment is direct, otherwise it is collateral, so far as concerns the assessments on property in Jefferson County.

The contention of appellant is that the language of the statute should be construed to mean that protests must be filed at any session of the court being held after the maturity of the published notice, whether the session began before that time or afterwards; and the contention of appellees is that the language should be construed to mean that the protests must be filed at a session of the court, either regular or adjourned, beginning after the maturity of the publication. Upon consideration of this question we have reached the conclusion that the contention of appellees is correct, and that the language means that the protests may be made at the next session, either regular or adjourned, beginning after the publication of the notice. If the meaning of the lawmakers had been in accord with the contention of appellant, different language would undoubtedly have been used. It could easily have been stated that protests must be filed on the next day of the court after the publication of the notice, but the language refers to sessions of the court, either regular or adjourned, to be begun and held after the publication of the notice, and not to sessions being held at that time. The lawmakers doubtless had a purpose in selecting the language used, and did it advisedly. When a

term of court is in progress, it remains in session from day to day until the completion of the business of the court, unless there is an adjournment over to a distant date, and then it is necessary for the court to make an order fixing the date for the adjournment. *Central Coal & Coke Co.* v. *Greer,* 129 Ark. 550. This statute in its reference to an adjourned session means one that begins after the publication of the notice—that is to say, that the adjourned session itself must begin thereafter; and the reference to a regular session means one beginning after the publication of the notice. Any other interpretation of the statute would materially shorten the period of time allowed for property owners to make their protests, and in case of doubt it is our duty to give such an interpretation as would afford the most reasonable opportunity to the property owners to appear. If we were to construe the statute according to the contention of appellant, it might occur that the maturity of the publication would fall on the very day that the court in regular session adjourned, and thus a reasonable time for the property owners to appear would be cut off. Hence we are of the opinion that the protests were filed within apt time, and that the attack upon the correctness of the assessment of benefits is direct and not collateral. The distinction between the two methods of attack upon the assessment of benefits is clearly marked in the decisions of this court and is important in considering the effect of the evidence.

Where the correctness of an assessment is assailed on collateral attack, in a suit brought after the expiration of the time allowed by statute, then the presumption in favor of the validity and correctness of the assessment is conclusive, unless the assessment is arbitrary on its face and void. The decisions on this subject are so numerous that it is unnecessary to cite them all, but we mention the following as indicating the views expressed by the court in all the cases on that subject: *Board of Improvement* v. *Pollard,* 98 Ark. 543; *Salmon* v. *Board of Improvement,* 100 Ark. 366; *Alcorn*

v. *Bliss-Cook Oak Co.,* 133 Ark. 118; *Burrus* v. *Board of Improvement,* 134 Ark. 14; *Road Improvement District* v. *Crary,* 151 Ark. 484.

On the other hand, when the suit is brought within the time authorized by statute for a judicial review of the assessments, the presumption of the correctness of the assessments is not conclusive, but may be overcome by evidence showing to the contrary. In other words, the direct attack provided for in the statute constitutes an original judicial review and must be determined according to the evidence adduced in the trial, and there is no conclusive presumption, as when the attack is merely collateral. *Missouri Pacific R. Co.* v. *Road Improvement District,* 137 Ark. 568; *Rogers* v. *Ark.-La. Highway Imp. Dist.,* 139 Ark. 322; *Wilkinson* v. *St. Francis County Rd. Imp. Dist.,* 141 Ark. 169.

In *Missouri Pacific R. Co.* v. *Road Improvement District, supra,* we said:

"The present proceedings instituted pursuant to the terms of the statute constituted a direct attack upon the correctness of the assessments, and, since the statute provides for the proceedings to be instituted in the chancery court, the case comes here for hearing *de novo* on the record made below, as in other appeals in chancery causes. The sole question therefore for our consideration is whether the evidence sustains the findings of the chancellor that the assessments of benefits against the property of the several appellants were correct and were in substantial uniformity with the assessments of other property in the district."

We have said in the cases referred to that, even in a direct attack, the question of the value of benefits, being one largely of opinion, the court will not substitute the judgment of its members for that of the board of assessors and commissioners of the district, for the statute creating the district has lodged the discretion with the assessors. There is a *prima facie* presumption in favor of the assessments made by the board of assessors; but, in a direct attack upon the correctness of the assess-

ment, if the evidence shows that the assessment is incorrect, it is the duty of the court to set it aside or to correct it, for nothing less would constitute a judicial review on such an attack.

It becomes necessary to critically review the testimony in this case to determine whether or not the decision of the chancellor was against the weight of the evidence. There was a large number of witnesses introduced in each of the cases, and all of the witnesses were more or less familiar with the lands in the district, particularly the ones involved in these proceedings, and also the nature of the improvement. Most of the witnesses were laymen, but they all showed more or less familiarity with questions of drainage and protection from overflow. Nearly all the owners of property involved in these cases—and they were numerous—testified in the case, and many others who were equally familiar with the conditions involved in the inquiry. The witnesses introduced by appellees predominate, numerically, to a very considerable extent. Appellants have introduced as witnesses the engineer of the district, and the statement of a former consulting engineer, and also the testimony of the engineer of a large levee district in a distant part of the State, also a few other witnesses who were familiar with the lands, particularly two or three who are members of the board of commissioners. The district covers a very large area, and only a small portion of it is involved in this controversy, most of the property owners not having protested. Most of the lands are within the drainage area of the stream of water known as Bayou Meto—or, to be correct, Big Bayou Meto, for there is a smaller stream in the territory known as Little Bayou Meto, which has already been dammed in the construction of the levee. Big Bayou Meto originates northeasterly from the city of Little Rock and runs for a distance of nearly one hundred miles before emptying into the Arkansas River. It drains a very large area, and in the rainy season it often overflows, most of the lands involved in this controversy being subject to overflow at

times from this stream.   There are conflicts in the testimony as to the extent to which the lands involved will be overflowed from the Arkansas River and protected therefrom by the levee already built and to be completed. There is evidence to the effect that a great deal of the land will not be overflowed at all, and other testimony introduced by appellant is to the effect that all of the lands will be more or less subject to overflow and will be protected by the levee.   The testimony adduced by appellant also tends to show that the benefit from the levee already built will be lost unless it is completed by extending the levee about one thousand feet and building a dam with floodgates across the mouth of Bayou Meto.   The plan is to close the floodgates during high water in the Arkansas River, thereby preventing the water from backing up in the other streams, but the gates will remain open except during high water, and there is testimony to the effect that when the gates are open the flow of water from the stream will be faster than it is now, because of the method of straightening the mouth of the stream.   When the floodgates are closed, during the high water period in the Arkansas River, Bayou Meto will necessarily overflow.   There is positive evidence that the overflow will be very considerable unless the water is pumped over the dam, and the evidence tends to show that this is impracticable on account of the high cost. The contention of appellees is that their lands will not be benefited by the completion of the levee, and that, on the other hand, it will increase the overflow from having the waters of Bayou Meto dammed in time of high water in the Arkansas River.

. The evidence in the case involves largely matters of opinion, but there are also facts to which the witnesses testified within their own knowledge.   It must be remembered that this inquiry does not involve the question whether or not the lands in controversy will enjoy any benefit from the levee, for they have already been assessed twenty dollars an acre, and the inquiry is whether or not an additional levy is justified.   The decree

of the chancellor leaves the original assessment unimpaired, but sets aside the additional assessment of eight dollars per acre. After considering the evidence as a whole, we are unable to say that the chancellor was not justified in his conclusion. Giving due weight to the judgment of the board of assessors, who were clothed with authority to make this assessment, we are unable to say that the testimony does not completely overcome it and show that the lands involved in this controversy will not receive any benefit in addition to the twenty dollars already assessed.

The cross-appeals involve the correctness of the original assessment, or rather seek a reassessment so as to decrease the amount of the original assessment. It appears from the record in the case that bonds have been issued pledging the revenues of the district, and that the assessment cannot be reduced without impairing the obligation of the contract. Indeed, the last statute (act of 1925, *supra*) authorizes a reassessment only for the purpose of paying the additional cost of the improvement—not for the purpose of reducing the former assessment.

The decree of the chancellor setting aside the reassessment and refusing to disturb the original assessment will be affirmed on both the appeal and the cross-appeal. However, the decree is too broad in restraining the district perpetually from increasing the assessment at any time hereafter or to any extent. The only question involved is the correctness of the present assessment under the conditions now existing. The decree should be modified so that it restrains merely the enforcement of the additional assessment. We express no opinion as to the powers of the district to reassess in the future, and merely hold that the decree should apply only to the present reassessment. The decrees are modified in this respect, and, as modified, are affirmed.

HART, J., did not participate.